BERMÚDEZ & LONGO, INC., demandante y recurrente, *v.* PUERTO RICO CASTING STEEL CORP., ETC., demandados y recurridos.

*Número:* 0-83-504 *Resuelto:* 29 de noviembre de 1983

*Roberto Lefranc Romero*, abogado de la peticionaria; *Luis M. Correa*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

A los fines de obtener sentencia sobre la rebeldía ya anotada, la Corporación recurrente ofreció una declaración

jurada de su Presidente prestada ante el notario Lic. José A. Méndez Cortada quien es socio del bufete que representa a dicha parte aunque no interviene como abogado en el pleito, pues el caso está a cargo de otro de los socios Lic. Roberto Lefranc Romero. La sala de instancia, en extendida aplicación de nuestra anotación en *Pagán* v. *Rivera Burgos*, 113 D.P.R. 750 (1983), al efecto de que no es precisamente correcto que el propio abogado, en función de notario, tome juramento a su cliente, rechazó la declaración jurada hasta no ser ratificada ante otro funcionario facultado para tomar juramentos, que no sea uno de los abogados del declarante. El efecto excluidor de la citada norma se detiene en el abogado a cargo del caso, el que de hecho ejerce la representación legal del cliente, sin que necesariamente se extienda a la intervención en carácter de notario, de sus socios y compañeros de bufete en cualquier otra calidad. Está en orden consignar los fundamentos de la expresión que sólo fue un escolio en *Pagán*, supra, y delimitar su campo hasta donde lo permita la a veces inasible reducción a términos absolutos de la preceptiva ética, partiendo de la ineludible premisa de que el notario es funcionario público usualmente llamado a proteger el derecho de dos o más partes y aun el de tercero que no comparece ante él, en ejercicio de una neutralidad incompatible con la misión del abogado que es la de inclinar la balanza en activa promoción del interés de su representado.

El repudio de la función dual de abogado y notario en un mismo caso aparece limitada a la litigación contenciosa en dos precedentes jurisprudenciales:

En *Negrón et al.* v. *El Superintendente de Elecciones*, 11 D.P.R. 366, 370 (1906), cuyo objeto fue una petición de *mandamus* jurada por los promoventes ante su abogado, declaró este Tribunal:

La sección 6 de la Ley de *mandamus* prescribe que la solicitud de auto de *mandamus* debe ser jurada en debida forma. La petición en el presente caso está jurada por los promo-

ventes ante su abogado, Don José G. Torres, que también parece ser notario. Aunque no haya ninguna ley prohibiendo este proceder, no es una práctica muy propia y no debe ser favorecida. Los abogados que tienen que entablar demandas en las cortes no debían ejercer como notarios en dichos casos, para tomar juramentos, ni para otros fines. Tal proceder da lugar á sospechar en cuanto á la justicia y la propiedad que debe observarse siempre en la administración de los juramentos. Los Abogados debían evitar hasta las apariencias de lo malo, y especialmente en el ejercicio de la profesión ante las cortes, y conservar sus togas libres de toda posibilidad de contaminación.

Y en *Rivera* v. *Cámara,* 17 D.P.R. 528, 537 (1911), [1] confrontados con declaraciones juradas preparadas en el bufete del abogado del peticionario y juradas ante el mismo como notario público nos ratificamos en la calificación de mala práctica en la que no debe insistirse, con la advertencia de que la corte debió rechazar dichas declaraciones.

 Existe tan manifiesta identidad entre abogado y cliente en lo que respecta al relato de los hechos sobre los cuales se pide remedio en la acción civil y tiene el abogado tanta libertad para escoger el lenguaje en que narra los hechos a él informados por el cliente, que en cualquier pleito —en el desarrollo de la controversia— puede surgir discrepancia entre abogado y cliente respecto al contenido de la alegación jurada y derivar en procedimientos[2] lesivos a la fe pública de que es custodio el notario. La presencia de un tercero en función de autenticar el juramento es resguardo de esa fe en caso de conflicto y da reposo a la interrogante del cliente: Mi abogado me defiende de la parte contraria, pero ¿quién me defiende de mi abogado? Es tan real esta posibilidad de aparente conflicto de intereses que

---

[1] Revocado sobre otros particulares en *Sampedro* v. *Fournier,* 69 D.P.R. 584, 588 (1949).

[2] Un cliente imputado de perjurio se volverá contra su propio abogado que puso las aseveraciones en su boca y se encontrará el abogado en difícil trance para descargar su responsabilidad social y proteger la fe pública en los instrumentos notariales.

la intervención del notario neutral, no comprometido, sirve para despejar aun la apariencia de conducta impropia, en una profesión de complicada ética que exige de sus practicantes que sean tan honestos en la fibra íntima de su consciencia como en la proyección exterior de sus actuaciones. El abogado debe evadir situaciones de aparente conducta irregular de las que sólo Dios y su consciencia sean testigos. Es aquí en la Tierra donde ha de mantener su toga limpia aun ante la limitada sabiduría de sus juzgadores, y por encima de la suspicacia de sus detractores.

■ La posibilidad de este desarrollo indeseable de la función dual de abogado y notario en el mismo caso se reduce a proporción y expectativa irrelevantes en los expedientes de jurisdicción voluntaria por su esencial naturaleza nocontenciosa.(³) No vemos, por tanto, impropiedad en la práctica observada durante largos años por apreciable parte de los abogados postulantes —ya aceptada como costumbre del foro— de tomar y legalizar el juramento de su cliente en las peticiones comunes de licencia para portar arma, dispensa de parentesco, declaratoria de herederos, disposición de bienes de menores, cambio de nombre, divorcio por mutuo consentimiento, y demás gobernados por procedimiento *ex parte*, y dejamos al sano juicio del abogado la decisión en cuáles de éstos, por sus particulares circunstancias, deberá requerir de su cliente que jure ante otro notario o ante el Secretario del Tribunal.

■ En la acción civil la figura confusa de abogado y notario en el mismo caso debe ser proscrita como germen con potencialidad del serio conflicto ético a que nos hemos referido. *Cf. Pagán* v. *Rivera Burgos*, supra. No habrá dificultad para observar la norma en los bufetes pluralizados,

---

(³) El fin limitado de la jurisdicción voluntaria es imprimir forma y fuerza jurídica a actos y manifestaciones consensuales de la voluntad privada, incluso a actos y manifestaciones unilaterales, a lo cual conviene atribuir sanción jurídica, mediante la intervención de la potestad pública. E. Escobar de la Riva, *Tratado de Derecho Notarial*, Ed. Marfil, S.A., 1957, págs. 27-28.

ni aun en los simplemente integrados por más de un practicante, toda vez que siendo la responsabilidad del notario personalísima e indisoluble en la operación institucional del bufete colectivo, *In re Meléndez Pérez*, 104 D.P.R. 770, 777 (1976), bastará con que el cliente jure ante uno de los notarios de la firma o sociedad que no habrá de intervenir como abogado en la litigación o tramitación del asunto. Reiteramos que puede haber situaciones que escapan a la reglamentación y en las que para evitar aun la apariencia de conducta impropia, el buen juicio del bufete aconsejará prescindir de su propio notario. Toda norma de ética tiene un punto de resistencia inamovible, donde termina la tolerancia. Ese punto no debe pasar desapercibido por el abogado cuya integridad profesional, sin la cual languidecerían los cánones de ética, le apartará instintivamente de la actuación incorrecta.

*Se expedirá el auto y se anulará la resolución recurrida.*

El Juez Asociado Señor Negrón García emitió opinión concurrente. El Juez Asociado Señor Dávila disintió con voto al que se unen los Jueces Asociados Señores Torres Rigual y Rebollo López. El Juez Asociado Señor Rebollo López emitió voto separado uniéndose al voto disidente emitido por el Juez Asociado Señor Dávila.

—O—

Opinión concurrente del Juez Asociado Señor Negrón García.

I

"Nuestros actos profesionales, como cualesquiera, y todos los actos humanos, son calificables moralmente, y están sujetos al deber y a la sanción. Quedan fuera de toda discusión la unidad e integridad humanas, y por ello, como dice CORTS GRAU, es inaceptable la posición del hombre que habitualmente aisla en su propio ánimo varios comparti-

mentos, y ahora piensa como filósofo, y ahora como creyente, y luego como moralista, y luego como Abogado (o como Notario), y nunca en su limpia integridad de hombre." José M. Farre, *Ética Profesional*, 12 Anales de la Academia Matritense del Notariado 249, 250 (1961).

A base de esa visión, concurrimos con la decisión del Tribunal. Según expusimos en *In re Rodríguez Torres*, 106 D.P.R. 698, 750 (1978), la vigencia de una norma de incompatibilidad de naturaleza ética no puede depender de que exista previamente un mandato legislativo.[1]

A tono con la misma, en *In re Lavastida et al.*, 109 D.P.R. 45, 90–91 (1979), detectamos el deber general —implícito en toda sociedad de abogados (bufete)— que tienen todos los socios de velar por que la práctica general sea compatible con la deontología profesional. Allí también reconocimos que un abogado no debería sufrir las consecuencias de una conducta profesional impropia de su socio si no había tenido ninguna intervención.

Dijimos:

La cualidad medular que distingue al notario, preste sus servicios o no en una sociedad de abogados, es la de "ser imparcial y actuar en la colisión de intereses en plano superior al de las partes, como señor y árbitro de la lucha, con la mira puesta en los fines morales y lícitos". G. Palomino, *Derecho Notarial*, pág. 262 (1948); en igual sentido, Fernández, *Tratado de Notaría*, Vol. I, pág. 297 (1895). Independientemente de su jerarquía en una sociedad de abogados, nunca debe empañar su reputación y honor, pues "ningún Notario debiera doblegarse a que su función pueda ser instrumento de la mentira, de la injusticia o de la impertinencia social . . . ." M. Otero Peón, *Algunos Problemas Deontológicos y de Otra Índole en el Notariado*, 46 Rev. Der. Not., pág. 183

---

[1] Recientemente, en *In re Rojas Lugo*, 114 D.P.R. 687 (1983), el Tribunal formuló una norma de incompatibilidad resultante en presidir una unión laboral y postular como abogado ante el patrono.

(1963). En todo momento viene obligado a actuar recta y escrupulosamente, rechazando toda noción de servilismo o condicionalismo de parte de los clientes o de sus propios socios. Jamás debe olvidar que es un "[t]estigo prácticamente inapelable de la verdad, así en el orden especulativo como el práctico, su competencia es fundamentalmente de orden ético". J. Alonso Vega, citado por M. Guimera Peraza, *Moral Profesional del Notario*, 28 Rev. Der. Not., pág. 248 (1960). Esta búsqueda y observancia de la verdad juega un papel esencial para el Notario. Véanse, también, E. Díaz de Guijarro, *La Fe Pública Notarial y la Interpretación de la Ley*, 16 Anales de la Academia Matritense del Notariado 25, 27–28 (1968); J. Gastalver y Gimeno, *La Formación de Notario*, 4 Anales de la Academia Matritense del Notariado 479, 496–500 (1948).

## II

En la praxis forense puertorriqueña, en muchas ocasiones, las contestaciones a interrogatorios, requerimientos de admisión y otros documentos que las Reglas de Procedimiento Civil exigen que sean juramentados, son en parte el producto final de una evaluación, reflexión y análisis entre el abogado y su representado como parte interrogada. Aclaramos que esa participación activa del abogado no la visualizamos hecha con ánimo de alterar la sustancia, veracidad y legitimidad de las contestaciones. Se circunscribe a que sean adecuadamente responsivas y compatibles con la teoría del caso en controversia, o para objetar y cualificar aquellas que no son pertinentes.

¿Puede persuasivamente sostenerse, que la intervención del abogado, en su actuación como notario, se limita al *jurat*? La contestación es en la negativa. ¿Qué consecuencia tiene entonces esa práctica sobre la norma de incompatibilidad? La respuesta exige sentar una premisa, a saber, reconocer un potencial conflictivo entre el cliente y abogado que en esa instancia también actúa como notario. "No puede olividarse, en efecto, la naturaleza especial del Derecho objetivo, que no constituye una ciencia exacta, *sino una*

*ciencia estimativa, cuyos productos, aunque gocen de objetividad, no pueden apreciarse sino a través del ángulo visual de los sujetos encargados de aplicar el Derecho.* Siempre que en una cuestión se hayan sentado con cierta solvencia distintos criterios o se haya intentado la prevalencia de puntos de vista diversos, *aunque uno de éstos haya tomado cuerpo y forma en una sentencia firme, no es ésta suficiente para exigir responsabilidad al funcionario perito en Derecho que ha aplicado un punto de vista opuesto.* El notario en este caso se halla en el mismo caso del juez a quien le han revocado una sentencia; no incurre evidentemente, por este sólo hecho, en responsabilidad." J. M. Sanahuja y Soler, *Tratado de Derecho Notarial*, Barcelona, Ed. Bosch, 1945, T. I, págs. 344–345. (Énfasis nuestro.)

En estas circunstancias, favorecemos la continuidad de la regla establecida en *Pagán* v. *Rivera Burgos*, 113 D.P.R. 750, 752 (1983), escolio 2, siguiendo a *Rivera* v. *Cámara*, 17 D.P.R. 528, 537 (1911), y *Negrón et al.* v. *El Superintendente de Elecciones*, 11 D.P.R. 366, 370–371 (1906), con las salvedades adoptadas hoy en los asuntos de naturaleza *ex parte* y al notario que no presenta conflicto potencial alguno. Frente a una norma irrestricta y rigurosa, hemos de refrendar aquella que mejor balance valorativo promueva. Las dificultades prácticas contadas, que pueda conllevar su observancia, no justifica su eliminación. Han sido reducidas a su necesaria expresión.

Finalmente, en cuanto a la objeción de que la norma crea incertidumbre, correctamente expresa la opinión, "puede haber situaciones que escapan a la reglamentación y en las que para evitar aun la apariencia de conducta impropia, el buen juicio del bufete aconsejará prescindir de su propio notario". Debe recordarse, que "[n]o es que se trate de adoptar un relativismo moral o ético, condicionado por circunstancias externas transitorias, que pudieran considerarse como determinantes de diferencias esenciales en

ese orden normativo, de tal manera que lo estimado otrora como cierto y verdadero pudiera considerarse después como falso o, cuando menos, dudoso, con lo que vendríamos a parar en aquella desconsoladora conclusión que Benavente pone en labios de uno de sus personajes, de que una verdad distinta en cada uno de los momentos diversos de la vida no viene a ser otra cosa que una mentira constante durante todo el curso de la vida. Es muy al contrario". A. Álvarez Robles, *Guión de un Ensayo sobre Deontología Notarial*, 7 Anales de la Academia Matritense del Notariado 5, 20 (1953). Más bien se trata, de que toda "norma de ética tiene un punto de resistencia inamovible, donde termina la tolerancia". Pág. 813.

—O—

Voto disidente emitido por el Juez Asociado Señor Dávila al cual se unen los Jueces Asociados Señores Torres Rigual y Rebollo López.

Disiento. Revocaría nuestras expresiones en *Pagán* v. *Rivera Burgos*, 113 D.P.R. 750, 752 esc. 2 (1983); *Rivera* v. *Cámara*, 17 D.P.R. 528, 537 (1911); y *Negrón et al.* v. *El Superintendente de Elecciones*, 11 D.P.R. 366, 370–371 (1906).

La norma expuesta en estos casos, al efecto de que un abogado que ostenta la representación de un litigio no debe tomarle el juramento de los documentos a utilizarse en el pleito, es de origen inglés. Al adoptarla y seguirla no se han expuesto las razones que la sustentan. Se apunta que han surgido dudas sobre la propiedad de la norma, pero dado el caso que se había actuado en esa forma por años, se ha persistido en ella. Nota, *Affidavits—Authority of Affiant's Attorney to Act as Notary*, 19 Texas L. Rev. 346 (1941). Anotación, *Oath or Acknowledgment Before Attorney*, 74 A.L.R. 771 (1931). Las jurisdicciones norteamericanas están divididas en cuanto a seguir esta norma. Unas la condenan

como impropia, otras no la siguen y hay algunas que las prohíben por estatuto específico a ese fin. Anotación, *Attorney Taking Client's Oath*, 21 A.L.R.3d 483 (1968).

Debí haber hecho constar en *Pagán* v. *Rivera Burgos*, supra, que no veo impedimento alguno para que un abogado tome el juramento de un cliente relacionado con las contestaciones a un interrogatorio y escritos a presentarse en un litigio en el que actúa como letrado de récord, a menos que lo prohíban específicamente las Reglas de Procedimiento. La función del notario al otorgar una declaración jurada se contrae a certificar o dar fe de los datos contenidos en el *jurat*, es decir, la identidad del otorgante, las circunstancias personales que describiere, lugar del otorgamiento y la fecha cierta. El notario ni siquiera da fe de los hechos o del acto suscrito por el compareciente.[1] En su función de abogado, la Regla 9 de Procedimiento Civil regula los hechos alegados bajo su firma, situación de gran delicadeza y en la cual un cliente también podría alegar conflictos en la versión de hechos narrada por el abogado. Mas no por eso se va a abolir la función del abogado de firmar documentos judiciales. La responsabilidad de lo que en el documento jurado o suscrito se afirma, es del compareciente y si éste afirma algo contrario a lo que al abogado le consta, éste tiene la oportunidad de explicar al cliente la responsabilidad que asume. Si, por el contrario, el abogado del litigante, en su actuación como notario, toma el juramento cuando le consta que lo expresado no es cierto, asume la responsabilidad conjuntamente con el cliente, por no ceñirse a la conducta que debe guiar a todo notario.

Es de notar que este Tribunal, por voz de su entonces Juez Asociado Señor De Jesús, juez de gran experiencia en la práctica notarial, al considerar la impugnación de un

---

[1] La función del notario es distinta cuando comparece en un acta notarial o escritura pública. Véanse, *Colón* v. *Shell Co. (P.R.) Ltd.*, 55 D.P.R. 593 (1939); *Ponce Real Estate Corp.* v. *Registrador*, 87 D.P.R. 215 (1963); *Inspector de Protocolos* v. *Dubón*, 107 D.P.R. 50 (1978).

afidávit de mérito que se acompañó a una moción de traslado jurado por la parte demandada ante su propio abogado, tímidamente hizo alusión a los casos de *Rivera* v. *Cámara*, y *Negrón et al.* v. *El Superintendente de Elecciones*, supra, para concluir que el juramento no era nulo. Así se expresó el Tribunal en *Soto* v. *Tesorero de P.R.*, 53 D.P.R. 950, 952–953 (1938):

> (*a*) Se ha resuelto en esta jurisdicción, siguiendo la regla establecida en el Continente, que los abogados que ostentan la representación de alguna de las partes en un pleito no deben ejercer funciones de notario en relación con el mismo a los efectos de tomar juramentos a sus clientes o para otros fines, y se ha dicho que semejante práctica no es propia y no debe seguirse; pero nunca se ha dicho que un juramento así tomado sea nulo.

Resta considerar el argumento de que el notario pueda tener un interés en lo expuesto en el documento que ante él se otorga. Tal argumento incorpora una de las prohibiciones de la Ley Notarial, la relativa a los documentos públicos, que impide el otorgamiento de escrituras cuando el notario tiene un interés en el negocio. Es evidente que este documento no podría ser otorgado ante el notario ni aun cuando las partes otorgantes no fueran sus clientes en un caso. Lo único que está ante nuestra consideración es si un abogado puede tomar juramento a su cliente en documentos a ser presentados en un caso, cuando no está prohibido por reglamento o por estatuto.

En la Ley Notarial de 1956 no hay prohibición alguna en este sentido, presumiendo que quisiera extenderse la aplicabilidad de las prohibiciones de los instrumentos públicos a las declaraciones juradas o suscritas ante notario. Véase, 4 L.P.R.A. sec. 1020.

La norma crea dificultades prácticas a los abogados y a los ciudadanos por éstos representados sin haber, a nuestro entender, razón meritoria que las justifiquen.

Además, la norma que hoy se establece por el Tribunal crea incertidumbre. Dispone en su parte final:

No vemos, por tanto, impropiedad en la práctica observada durante largos años por apreciable parte de los abogados postulantes —ya aceptada como costumbre del foro— de tomar y legalizar el juramento de su cliente en las peticiones comunes de licencia para portar arma, dispensa de parentesco, declaratoria de herederos, disposición de bienes de menores, cambio de nombre, divorcio por mutuo consentimiento, y demás gobernados por procedimiento *ex parte*, y dejamos al sano juicio del abogado la decisión en cuáles de éstos, por sus particulares circunstancias, deberá requerir de su cliente que jure ante otro notario o ante el Secretario del Tribunal.

En la acción civil la figura confusa de abogado y notario en el mismo caso debe ser proscrita como germen con potencialidad del serio conflicto ético a que nos hemos referido. *Cf. Pagán* v. *Rivera Burgos*, supra. No habrá dificultad para observar la norma en los bufetes pluralizados, ni aun en los simplemente integrados por más de un practicante, toda vez que siendo la responsabilidad del notario personalísima e indisoluble en la operación institucional del bufete colectivo, *In re Meléndez Pérez*, 104 D.P.R. 770, 777 (1976), bastará con que el cliente jure ante uno de los notarios de la firma o sociedad que no habrá de intervenir como abogado en la litigación o tramitación del asunto. Reiteramos que puede haber situaciones que escapan a la reglamentación y en las que para evitar aun la apariencia de conducta impropia, el buen juicio del bufete aconsejará prescindir de su propio notario. Toda norma de ética tiene un punto de resistencia inamovible, donde termina la tolerancia. Ese punto no debe pasar desapercibido por el abogado cuya integridad profesional, sin la cual languidecerían los cánones de ética, le apartará instintivamente de la actuación incorrecta. Págs. 812-813.

Se condena una práctica notarial, mas no se declara nulo el documento otorgado. No se extiende la norma a los integrantes del bufete que no sean abogados de récord. Éstos quedan en libertad de otorgar el documento, mas, al no haber una norma clara y definitiva, se les coloca en riesgo de incurrir en una falta notarial si el juicio del bufete es erróneo. Por otro lado, se permite la práctica cuando se trata de procedimientos *ex parte*, pero se advierte contra posibles infracciones en esos procedimientos. Pende contra

los abogados una espada de Damocles y su única guía para evitarla es su buen juicio.

—O—

Voto separado emitido por el Juez Asociado Señor Rebollo López uniéndose al voto disidente emitido por el Juez Asociado Señor Dávila.

En el caso de *Págan* v. *Rivera Burgos,* 113 D.P.R. 750 (1983), hice constar, aun cuando no expresé los fundamentos, que disentía. Entendí en aquel momento que el ya famoso escolio número 2 de dicha opinión causaría no sólo furor dentro de la clase togada, sino un estado de desasosiego completamente innecesario en la práctica privada de la profesión en Puerto Rico.

Los hechos ocurridos con posterioridad al 21 de enero de 1983, desafortunadamente, nos han dado la razón. Los tribunales de instancia rápidamente y con mucha lógica implementaron dicha norma, aplicándola a situaciones posiblemente no previstas por este Tribunal al emitir la citada opinión. En cumplimiento de la misma, resolvieron que si el juramento no podía prestarse ante el abogado de récord del caso, tampoco podía ser prestado ante los socios ni subordinados de dicho abogado. Esto representó el que todos los abogados en Puerto Rico se vieran en la obligación de ir en busca de un compañero, dondequiera que la oficina del más próximo a ellos estuviera localizada, para que se pudieran juramentar adecuadamente los documentos pertinentes.

En el día de hoy, en lugar de corregir el error cometido, la mayoría de este Tribunal insiste en perpetuar el mismo. Peor aún, la "nueva" norma que se establece en el día de hoy resulta discriminatoria en su aplicación. Ello es así, ya que la norma sigue afectando a aquellos abogados que practican la profesión en forma individual. Igualmente, afecta a los compañeros que trabajan en pequeños bufetes,

por cuanto, por lo general, todos y cada uno de ellos se ven compelidos a participar, en una que otra ocasión, como abogado en todos los casos pendientes en su bufete. En resumen, la "nueva" norma hoy decretada por la mayoría de este Tribunal sólo favorece a aquellos grandes bufetes que existen en Puerto Rico y que por contar con los recursos humanos necesarios pueden darse el lujo de tener abogados especializados por materia.

Por entender correcto el razonamiento hecho en el voto disidente emitido por el compañero Juez Carlos V. Dávila, y por los fundamentos adicionales arriba expresados, me uno a dicho voto disidente.