per curiam:
El 17 de mayo de 2012 la Oficina del Procu-rador General de Puerto Rico presentó una querella sobre conducta profesional contra el Ledo. José M. Toro Iturrino (licenciado Toro Iturrino, querellado o letrado) en cumpli-miento con la orden de este Tribunal. (1) En la querella se le imputó violar el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, y la Regla 5 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, al autorizar la Escritura Número 1 de 20 de enero de 2005. Ello porque la transacción se realizó como parte de un pleito contencioso donde el abogado era el representante legal de una parte en el pleito.
Luego de que el licenciado Toro Iturrino sometiera su posición sobre las alegaciones presentadas, nombramos a la Hon. Jeannette Ramos Buonomo como Comisionada Especial para que recibiera y aquilatara la prueba. (2) Además, le requerimos que preparara un informe con sus determinaciones de hechos y las recomendaciones que estimara procedentes.
Posteriormente, el querellado presentó su contestación al Informe de la Comisionada y aceptó su contenido. Exa-minado el referido escrito y la contención del querellado, coincidimos con la Comisionada Especial en que el abogado incurrió en la violación ética señalada.
Veamos los antecedentes fácticos que surgen del In-forme de la Comisionada Especial y del legajo del caso para atender de la querella ética que nos ocupa.
*585 r — H
El Ledo. José M. Toro Iturrino fue admitido al ejercicio de la abogacía el 18 de noviembre de 1981. El 4 de enero de 1982 se le autorizó a ejercer como notario público. Este se dedica a la práctica privada de la profesión y tiene su ofi-cina profesional ubicada en el municipio de Sabana Grande.
El Dr. Giuseppe Pandolfi De Rinaldis (doctor Pandolfi, querellante o quejoso) presentó una queja ante el Tribunal Supremo contra el licenciado Toro Iturrino, donde le im-putó violar los Cánones 18, 21, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX.(3) En términos generales, le imputó tener un conflicto de interés y aparentar una conducta indebida al asumir la representación legal de personas cuyos intereses estaban en conflicto.
El letrado representó al Sr. Erasmo Asencio Rivera (señor Asencio Rivera) en el caso Erasmo Asencio Rivera, et al. v. Francisco Negrón Mora. (4) Surge de los hechos de ese caso que el 2 de mayo de 1994 el señor Asencio Rivera y el Sr. Francisco Negrón Mora (señor Negrón Mora) suscribieron un contrato de opción de compra mediante el cual el segundo obtuvo la primera opción de compra de un solar identificado con el número 17 en un proyecto de urbanización ubicado en el municipio de Lajas, Puerto Rico.(5)
El 26 de mayo de 1998 el señor Asencio Rivera y su esposa, la Sra. Francisca Romero Moreno, por conducto del licenciado Toro Iturrino, presentaron una demanda en daños y perjuicios contra el señor Negrón Mora ante el Tri *586 bunal de Primera Instancia (TPI), Sala de San Germán.(6) En ella se reclamaba el cumplimiento específico del contrato de opción entre las partes con relación al solar identificado con el número 17.(7) El licenciado Toro Iturrino adujo que los demandantes se habían comprometido verbalmente a venderle al quejoso un predio de terreno que se segregaría del solar en cuestión. Empero, cuando el señor Negrón Mora se enteró de la transacción, enmendó el plano dividiendo el solar sujeto a opción y vendió dicho predio directamente al doctor Pandolfi.(8)
Así las cosas, el 22 de septiembre de 1999 la demanda fue enmendada para incluir al quejoso y a su esposa como demandados por interferencia culposa de obligación contractual y por los daños causados a una tubería de alcan-tarillado de los demandantes. El TPI dictó sentencia des-estimando la primera causa de acción contra el quejoso por estar prescrita. Por otra parte, la acción de daños se des-estimó sin perjuicio, ya que ambas partes solicitaron el de-sistimiento voluntario de esa acción.(9)
Transcurridos seis años de litigio, el 20 de enero de 2005 el licenciado Toro Iturrino autorizó la Escritura Núm. 1, titulada Escritura de Segregación, Compraventa y Traspaso.(10) Mediante esta Escritura, el señor Negrón Mora segregaba, cedía y traspasaba el predio de terreno identificado como solar 17 a favor del señor Asencio Rivera y su esposa.(11)
En ese escenario, cinco días luego, los demandantes pre- *587 sentaron una moción urgente contra el demandado, señor Negrón Mora, el 25 de enero de 2005 por medio del licen-ciado Toro Iturrino.(12) En esta alegaron que, luego de otorgarse la escritura objeto del inmueble en controversia, fue-ron a inspeccionar el solar. En ese momento se percataron de que no tenía la toma para la instalación de la tubería por la que discurrirían las aguas negras hacia el alcantarillado.(13) Los demandantes expresaron que tanto el señor Negrón Mora como el doctor Pandolfi habían intentado desconectar nuevamente el alcantarillado del solar en cuestión.(14) Por esto solicitaron una orden para que el demandado conectara el desagüe de aguas negras al sistema de alcantarillado o que, en la alternativa, se autori-zara a la parte demandante a conectar a su propio costo el desagüe de aguas negras al sistema de alcantarillado a través del solar adquirido sin afectar en forma alguna los predios de terceras personas.(15) El TPI declaró “con lugar” dicha moción y ordenó al señor Negrón Mora que no interviniera, de manera que los demandantes pudieran conectar la tubería de aguas negras de su propiedad al alcantarillado de la urbanización residencial Villa Panorámica a través del solar adquirido.(16)
Por otra parte, el querellante expresó que en el caso Carlos R. González, et als. v. Francisco Negrón Mora,(17) ventilado ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez, el querellado presentó una moción en representación del Sr. Charles Castro Franco, para que este último interviniera en el pleito. El señor Castro Franco estaba representado inicialmente por el Ledo. Luis *588 Fernández Domenech.(18) El señor Castro Franco tenía una reclamación del solar 16 de Villa Panorámica en Lajas contra el urbanizador del proyecto, el señor Negrón Mora. Re-cordemos que el señor Negrón Mora (parte demandada en este caso) fue uno de los otorgantes de la mencionada Es-critura Núm. 1, en la que el querellado ejerció funciones como notario. En este pleito, el tribunal había emitido una Sentencia Parcial desestimando con perjuicio la acción interpuesta por el señor Castro Franco. El querellante presentó un escrito por derecho propio en reacción a la petición de intervención presentada por el licenciado Toro Iturrino. El doctor Pandolfi solicitó la inhibición del licenciado Toro Iturrino. Empero, su reclamo no fue atendido por el tribunal en la vista celebrada el 2 de agosto de 2005.(19)
A la luz de los hechos mencionados, el asunto fue remitido a la Oficina de Inspección de Notarías (ODIN). Esta oficina se encargaría de la investigación y haría una evaluación de la queja, dadas las implicaciones respecto a la práctica notarial del abogado querellado.(20)
El 28 de junio de 2011 la Oficina del Procurador General presentó un informe en torno a la queja Núm. AB-2006-90. En dicho informe obra otro rendido por la ODIN de 9 de septiembre de 2009, en el que exponen los hallazgos habi- *589 dos en la investigación de la queja que esta Curia ordenó. Conforme tales informes, el 10 de noviembre de 2011 este Tribunal dictó una Resolución y ordenó la presentación de la querella contra el letrado. Siguiendo ese mandato, el 17 de mayo de 2012 la Oficina del Procurador General de Puerto Rico procedió a someter la querella que nos atañe en el presente caso.
Así las cosas, el 27 de junio de 2013 emitimos una Resolución en la que nombramos a la Hon. Jeannette Ramos Buonomo, exjueza del Tribunal de Apelaciones, para que, en calidad de Comisionada Especial, recibiera la prueba y nos rindiera un informe con las determinaciones de hechos y sus recomendaciones.(21) Cumpliendo con esta encomienda, la Comisionada Especial pautó una Conferencia con Antelación a Vista para estipular los procedimientos que se llevarían a cabo.(22) En la misma, las partes acordaron preparar una estipulación de los hechos medulares pertinentes a la querella. En vista de ello, las partes emitieron una Moción Informando Estipulaciones de Hechos. (23)
El 29 de agosto de 2013 se celebró la continuación de la Conferencia con Antelación a la Vista Final. En ella, se presentaron testigos de reputación para hablar sobre la reputación personal y profesional del licenciado Toro Iturrino.(24) Ocuparon la silla testifical el Ledo. Néstor Samuel García Sotelo (licenciado García Sotelo) y el Ledo. Nasser Awad Taha Montalvo (licenciado Taha Montalvo). (25) El licenciado García Sotelo testificó conocer al *590 querellado en el área personal, profesional y como adver-sario en el Tribunal desde el 1987. También, expresó que la opinión en el área oeste relacionada con el licenciado Toro Iturrino, desde el punto de vista ético y profesional, es que es una persona sumamente honesta. Indicó que jamás ha visto que el querellado desempeñara acto alguno contrario a una buena administración de la justicia y a los cánones que rigen la ética profesional. De otra parte, el licenciado Taha Montalvo expresó que conoce al licenciado Toro Itu-rrino desde la infancia, pues este fue abogado de su padre. Indicó, además, que en el área oeste la opinión es que el querellado es un abogado serio, competente y extraordina-riamente diligente. Culminado el desfile de la prueba, el caso quedó sometido ante la consideración de la Comisio-nada Especial para rendir el informe a esta Curia.
En atención a ello, la Comisionada Especial rindió su Informe el 16 de octubre de 2013. En este hizo una exposi-ción de los hechos procesales y del trasfondo del caso de marras. Además, puntualizó que la reputación del licen-ciado Toro Iturrino es excelente y que su historial profesio-nal previo indica que es una persona admirada. Es por esto que, tomando en consideración los factores antes expuestos y los hechos particulares del caso, recomendó como medida disciplinaria una amonestación al querellado.
En ese escenario, el 23 de octubre de 2013 el licenciado Toro Iturrino compareció mediante una Moción Informativa, en la que aceptó los hechos del informe de la Comisionada Especial. Nuevamente expresó que la situación no se repetirá y que honrará el privilegio que significa ejercer la profesión de la abogacía. Así las cosas, el caso quedó some- *591 tido en sus méritos para la adjudicación por esta Curia el 23 de diciembre de 2013.
Examinado el marco fáctico que antecede, pasemos a exponer el estado de derecho aplicable a la situación ante nuestra consideración.
II
La querella presentada por la Oficina del Procurador General imputó al licenciado Toro Iturrino haber violado el Canon 38 del Código de Ética Profesional, supra, y la Regla 5 del Reglamento Notarial de Puerto Rico, supra, al ejercer las funciones de abogado y notario en un mismo pleito.
Como principio del derecho notarial, todo notario ineludiblemente debe cumplir con la Ley Notarial de Puerto Rico y con los cánones del Código de Ética Profesional.(26)
El Canon 38 del Código de Ética Profesional, supra, establece que:
El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia.
Al examinar este precepto, debemos tener presente que cada abogado es un espejo en el que se refleja la imagen de la profesión y debe actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejerce. In re Olivera Mariani, 173 DPR 498, 511 (2008); In re Gordon Menéndez I, 171 DPR 210, 215 (2007). La apariencia de conducta impropia tiene un efecto dañino sobre la ima-gen, la confianza y el respeto de la ciudadanía hacia la profesión, así como lo tiene la verdadera “impropiedad *592 ética”. In re Gordon Menéndez I, supra, pág. 216. Véase, también, In re Sepúlveda Girón, 155 DPR 345, 361 (2001).
La prohibición que subyace en el Canon 38, supra, justifica que se sancione a un abogado por la apariencia de conducta impropia y no se condiciona su aplicación a la violación de ningún otro canon. In re Olivera Mariani, supra; In re Gordon Menéndez I, supra. Es decir, el Canon 38 opera exproprio vigore, por lo que cuando un abogado viola este canon, ello amerita nuestra intervención disciplinaria. In re Olivera Mariani, supra, pág. 512.
Por otra parte, la Regla 5 del Reglamento Notarial de Puerto Rico, supra, dispone que:
La práctica de la profesión de abogado puede ser en algunas ocasiones incompatible con la práctica de la notaría.
El notario autorizante de un documento público está impe-dido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las con-traprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él.
El notario está impedido de representar como abogado a un cliente en la litigación contenciosa y, a la vez, servir de notario en el mismo caso por el posible conflicto de intereses o incom-patibilidades que puedan dimanar del mismo.
Los hechos del caso In re Avilés, Tosado, 157 DPR 867 (2002), son muy similares a la controversia que nos ocupa. En el mismo determinamos que el abogado querellado violó la Regla 5 del Reglamento Notarial, supra. El licenciado Avilés Cordero actuó como representante legal del señor Tosado Arocho para exigir el cumplimiento específico de un acuerdo verbal de compraventa sobre un inmueble. Posteriormente, autorizó varias escrituras donde su cliente fue el otorgante. Estas escrituras recogían el negocio jurídico objeto del pleito. El licenciado Avilés Cordero entendió que su actuación no constituyó violación a la Regla 5 del Reglamento Notarial, supra, pues autorizó las escrituras una vez había cesado su gestión profesional como represen- *593 tante legal. Puntualizó, además, que su gestión profesional como notario fue el resultado de una estipulación hecha por las partes y que contó con el aval del foro judicial. Ante estos hechos, concluimos que su conducta era un evidente ejemplo de la incompatibilidad prohibida dispuesta en la Regla 5 del Reglamento Notarial de Puerto Rico, supra.
Más recientemente, en In re Martínez Almodóvar, 180 DPR 805 (2011), el licenciado Martínez Almodóvar compa-reció en dos ocasiones como representante legal del señor Cancel Pagán, luego de fungir como notario y otorgar la escritura de compraventa objeto de dos pleitos distintos. En esa ocasión, reiteramos que esa conducta constituía una clara violación a la Regla 5 del Reglamento Notarial, supra.
Hechos similares vimos en el caso In re Chiques Velázquez, 161 DPR 303 (2004). En esa ocasión, la licenciada Chiques Velázquez, como representante legal del señor Pérez Rivera en un pleito de división de gananciales, autorizó como notaría una escritura de compraventa de un bien inmueble perteneciente a la extinta sociedad de gananciales en la que fue parte su cliente. En vista de ello, puntualizamos que la práctica de la abogacía es incompatible con la práctica de la notaría cuando ambas intervenciones de abogado y de notario tratan sobre el mismo asunto. Véanse, además: In re Matos Bonet, 153 DPR 296, 298 (2001); In re Colón Ramery, 138 DPR 793, 796 (1995).
Luego de exponer el marco ético que antecede, pasemos a discutir si el querellado infringió las disposiciones del Canon 38, supra, y de la Regla 5 del Reglamento Notarial, supra.
III
Como mencionáramos, en la querella presentada por el Procurador General se imputó al licenciado Toro Iturrino haber incurrido en una conducta violatoria del Canon 38 *594 del Código de Ética Profesional, supra, y de la Regla 5 del Reglamento Notarial de Puerto Rico, supra. Como parte del proceso disciplinario, la Comisionada Especial rindió su Informe y concluyó que la evidencia demostró que el querellado infringió el referido precepto ético y la normativa notarial. Le asiste la razón. Veamos.
En In re Colón Ramery, supra, págs. 796-797, citando a B. & L., Inc. v. P.R. Cast. Steel Corp., 114 DPR 808 (1983), puntualizamos la prohibición de que un abogado notarice documentos de su cliente en un pleito en el cual también lo represente y que está pendiente ante los tribunales. Esto responde a que
[e]xiste tan manifiesta identidad entre abogado y cliente en lo que respecta al relato de los hechos sobre los cuales se pide remedio en la acción civil y tiene el abogado tanta libertad para escoger el lenguaje en que narra los hechos a él informados por el cliente, que en cualquier pleito —en el desarrollo de la controversia— puede surgir discrepancia entre abogado y cliente respecto al contenido de la alegación jurada y derivar en procedimientos lesivos a la fe pública de que es custodio el notario. (Escolio omitido). B. & L., Inc. v. P.R. Cast. Steel Corp., supra, pág. 811.
Por esto, hemos pautado que la práctica de la profesión de abogado es incompatible con el ejercicio de la notaría cuando ambas intervenciones traten el mismo asunto. A esos efectos, hemos dispuesto lo siguiente:
La expectativa del abogado-notario de, una vez otorgado el documento en el cual actuó como notario, activar una relación de abogado-cliente con uno de los otorgantes o de mantener una relación de ese tipo que existía previo al otorgamiento del documento, trastoca la presunción de imparcialidad que protege toda labor del notario y empaña la fe pública de la cual éste es custodio. In re Colón Ramery, supra, págs. 797-798.
Según los hechos estipulados y conforme a la normativa reseñada, no hay un ápice de duda de que el licenciado Toro Iturrino ejerció indebidamente la función dual de abo-gado y notario al autorizar una escritura sobre un bien *595 inmueble que era objeto de un litigio en el cual el quere-llado era abogado. Por otro lado, la apariencia de conducta impropia prohibida por los cánones de ética profesional fue aún más patente cuando el querellado presentó una mo-ción urgente pocos días después del otorgamiento de la escritura. El contenido de esta moción estaba dirigido contra el señor Negrón Mora, uno de los comparecientes de la escritura donde el licenciado Toro Iturrino fungió como no-tario público.
No podemos ignorar que las acciones del letrado constituyen una violación a la Regla 5 del Reglamento Notarial, supra, y al Canon 38 del Código de Ética Profesional, supra, al crear una apariencia de conducta impropia. A la luz de estos antecedentes, avalamos la conclusión contenida en el informe presentado por la Comisionada Especial.
Por otro lado, al determinar la sanción disciplinaria que se le impondrá al abogado que haya incurrido en una conducta antiética, podemos tomar en cuenta lo siguiente:
[...] (i) la buena reputación del abogado en la comunidad; (ii) su historial previo; (iii) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; (iv) la aceptación de la falta y su sincero arrepentimiento-, (v) si se trata de una conducta aislada; (vi) el ánimo de lucro que medió en su actua-ciónx; (vii) resarcimiento al cliente, y ([viii]) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien según los hechos. (Énfasis suplido). In re Cotto Luna, 187 DPR 584, 593 (2013). Véase, también, In re Vázquez Pardo, 185 DPR 1031, 1044 (2012).
Surge del expediente de autos que la reputación del que-rellado en su comunidad y entre sus compañeros profesio-nales es muy buena. Esto se destaca en los testimonios de los testigos de reputación que declararon ante la Comisio-nada Especial. A esos efectos, el licenciado García Sotelo indicó que el querellado se ha desempeñado siempre respe-tando la buena administración de la justicia. También, des-cribió al licenciado Toro Iturrino como una persona *596 respetuosa. Por otra parte, el licenciado Taha Montalvo ex-presó que el querellado era una persona trabajadora y diligente. Indicó, además, que le ha sorprendido grande-mente la querella presentada en su contra.
Si bien el licenciado Toro Iturrino no tiene historial pre-vio de sanciones éticas, en este caso su conducta contra-viene el marco ético esbozado. Empero, debemos enfatizar que el querellado admite que sus actuaciones fueron con-trarias a los cánones de ética profesional. Es decir, el le-trado aceptó que cometió un error al otorgar la escritura en controversia y sostuvo que lo hizo de buena fe y que enten-día que se trataba de una intervención neutral.
Concluimos, pues, que el letrado infringió el Canon 38 del Código de Ética Profesional, supra, y la Regla 5 del Reglamento Notarial de Puerto Rico, supra. En atención a ello, reafirmamos que este Tribunal no tolerará actuacio-nes de esta naturaleza.
IV
Por los fundamentos que anteceden, censuramos enérgi-camente al Ledo. José M. Toro Iturrino. Le apercibimos que, de incurrir nuevamente en una conducta impropia, po-drá ser sancionado de forma más grave, incluyendo la sus-pensión indefinida del ejercicio de la abogacía y de la notaría. Le advertimos, además, que deberá ser más cuida-doso con el ejercicio profesional que desempeña y ceñirse estrictamente a los preceptos que rigen el ordenamiento notarial y el Código de Ética Profesional.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez no intervinieron.

 Examinados el Informe de la Oficina del Procurador General y el escrito “Solicitud de consolidación, expresión y aclaración de asuntos fácticos de la querella sometida por el Procurador General y expresión a la contestación de la querella por el querellado”, presentado por el querellante, Dr. Giuseppe Pandolfi De Rinaldis, emitimos una Resolución el 10 de noviembre de 2011, donde autorizamos que se presentara la querella de este caso.

 Vista la Querella, presentada por la Oficina de la Procuradora General, y la Contestación a Querella, presentada por el Ledo. Harry N. Padilla Martínez, abogado del querellado, se nombró a la Hon. Jeannette Ramos Buonomo, exjueza del Tribunal de Apelaciones, para que en presencia de las partes y en calidad de Comisionada Especial, recibiera la prueba y nos rindiera un informe con las determinaciones de hecho y recomendaciones que estimase pertinentes. Véase Resolución de 27 de junio de 2013, Caso Núm. CP-2012-10.

 Véase Queja AB-2006-90, Apéndice del Informe de la Procuradora General, pág. 86.

 Civil Núm. CD-1998-0469.

 Véase Demanda, Apéndice del Informe de la Procuradora General, pág. 46. Mediante el contrato otorgado, el codemandado Sr. Francisco Negrón Mora, aseguraba haber sometido un proyecto de lotificacíón de una finca de 2.893 cuerdas ubicada en el barrio La Parguera, del municipio de Lajas, ante la Administración de Reglamentos y Permisos (ARPe), caso número 92-57-D262.

 Demanda, supra, pág. 46.

 Íd.

 Íd.

 Véase Sentencia Parcial de 25 de junio de 2004, Apéndice del Informe de la procuradora general, pág. 70. Véase, además, Moción solicitando desistimiento, Apéndice del Informe de la procuradora general, pág. 68.

 Véase Escritura de Segregación, Compraventa y Traspaso de Solar, Apéndice del Informe de la procuradora general, pág. 55.

 Este solar fue objeto de la controversia en el caso Erasmo Asencio Rivera, et al. v. Francisco Negrón Mora, Civil Núm. CD-1998-0469.

 Véase Moción urgente, Apéndice del Informe de la procuradora general, pág. 64.

 Íd.

 Íd.

 Íd.

 Véase Orden, Apéndice del Informe de la procuradora general, pág. 67.

 Civil Núm. IAC-1997-0368.

 El señor Negrón Mora, como dueño y desarrollador de una finca en el municipio de Lajas, Puerto Rico, se comprometió a realizar varias obras de infraestructura en el lugar para que ARPe otorgara los permisos de segregación necesarios y, así, entregar el título de propiedad a los optantes de los terrenos. Debido al incumplimiento del señor Negrón Mora con lo anterior, los optantes, entre ellos el Sr. Charles Castro Franco, presentaron una acción civil por incumplimiento de contrato ante el TPI. Véase Informe de la Oficina de Inspección de Notarías (ODIN), Apéndice del Informe de la procuradora general, pág. 71.

 Véase Moción solicitando relevo de sentencia, intervención y nulidad de escritura, Apéndice del Informe de la Procuradora General, pág. 18. Véase, además, la Resolución de 29 de noviembre de 2005 del TPI, Sala Superior de Mayagüez, en la que se declaró “ha lugar” la referida moción de relevo de sentencia presentada por el licenciado Toro Iturrino a favor de su cliente, el señor Charles Castro. La Resolución guarda silencio respecto a la solicitud de inhibición presentada por el doctor Pandolfi.

 Véase Informe de ODIN, Apéndice del Informe de la procuradora general, pág. 71.

 En el descargo de su encomienda, la Comisionada Especial tiene la prerrogativa de expedir citaciones y otros mandamientos de la misma manera que si fueran ordenadas directamente por este Tribunal, bajo apercibimiento de desacato.

 La misma se llevó a cabo el 1 de agosto de 2013 en el Salón de Sesiones del Tribunal Supremo de Puerto Rico.

 Las partes presentaron esta moción el 20 de agosto de 2013.

 Esto se llevó a cabo según solicitado por el Ledo. Harry Padilla Martínez, abogado del querellado.

 El licenciado García Sotelo trabajó en el Departamento de Asuntos del Consumidor (Daco) por cuatro años y, posteriormente, entró al Ministerio Público como *590 Fiscal Auxiliar para el Tribunal de Distrito. Se jubiló en abril de 2007 cuando cumplió sus 30 años de servicio. Actualmente tiene práctica privada como abogado. Por otro lado, el licenciado Taha Montalvo ha sido profesor de Derecho en la Pontificia Universidad Católica de Puerto Rico. Fue Decano Asociado de la, Facultad de Dere-cho de dicha institución. Enseñó varios cursos, entre ellos el de Etica y Responsabi-lidad Profesional. Véase Minuta de la conferencia con antelación a vista final del 29 de agosto de 2013.

 Véanse: Ley Núm. 75 de 2 de julio de 1987 (4 LPRA sec. 2001 et seq.); 4 LPRA Ap. IX).