*In re* JOSUÉ FLORES TORRES.

*Número:* 4503    *Resuelto:* 19 de enero de 1990

*Govén D. Martínez Surís, Director de la Oficina de Inspección de Notarías.*

PER CURIAM: Mediante opinión *per curiam* de 17 de noviembre de 1987 suspendimos del ejercicio del notariado por seis (6) meses al Lcdo. Josué Flores Torres por no haber cumplido con el deber de ilustración y consejo notarial en ocasión de autorizar una escritura de hipoteca. Como consecuencia, su obra notarial fue incautada y remitida al Director de la Oficina de Inspección de Notarías, Lcdo. Govén D. Martínez Surís.

Oportunamente, su examen reveló, como deficiencias, la falta de una firma e iniciales de una otorgante en una escritura, los Protocolos de 1986 y 1987 sin índice ni encuadernación, y la omisión de no haber cancelado ciento sesenta y siete (167) Sellos de Asistencia Legal en su Registro de Afidávit.

El 12 de enero de 1989 le requerimos que subsanara esas deficiencias. El 1ro de marzo de 1989 el Director de la Oficina de Inspección de Notarías, Lcdo. Govén D. Martínez Surís, nos rindió un informe expositivo indicando de que a esa fecha el notario Josué Flores Torres no había subsanado las deficiencias relativas a no haber cancelado ciento sesenta y siete (167) Sellos de Asistencia Legal en su Registro de Afidávit según le fue informado desde el 16 de diciembre de 1987.

Ante esa situación, el 31 de marzo le concedimos un término de veinte (20) días para que subsanara esas omisiones y, simultáneamente, compareciera a mostrarnos causa por la cual no debería ser disciplinado.

El 14 de abril el notario Flores Torres suministró y canceló dichos sellos. Nos incumbe, pues, determinar la sanción disciplinaria.

I

En *In re Platón*, 113 D.P.R. 273 (1982), establecimos claramente que la obligación del notario de cancelar los sellos requeridos por ley en los instrumentos públicos es

162

de estricto cumplimiento. Poco después, en *In re Feliciano*, 115 D.P.R. 172 (1984), reiteramos esa obligación y expusimos que su incumplimiento exponía al notario a graves sanciones disciplinarias, incluso separación del ejercicio de la abogacía. Caracterizamos entonces que esa responsabilidad de adherir y cancelar los sellos era de *naturaleza continua*. Finalmente, en *In re Merino Quiñones*, 115 D.P.R. 812, 813–814 (1984), expandimos estos pronunciamientos y resolvimos que la práctica notarial de no cancelar los correspondientes Sellos de Rentas Internas *inmediatamente* después de otorgada una escritura constituía una violación a la Ley Notarial de Puerto Rico que podría incluso *"resultar en la configuración de un delito de apropiación ilegal,* por cuanto el importe de dichos sellos es por lo general cobrado por el notario a su cliente al momento de la otorgación del instrumento con el propósito expreso y específico de la compra y cancelación de los referidos sellos. Cuando menos, constituye una práctica altamente censurable [e intolerable] que no debe ser continuada . . . y que puede constituir, *por sí sola, causa suficiente para la separación de un abogado del ejercicio de la notaría en Puerto Rico"*. (Énfasis suplido.)

A tono con ese lineamiento jurisprudencial, en *In re Quidgley Viera*, 119 D.P.R. 72 (1987), suspendimos del ejercicio de la profesión a dicho abogado por ignorar nuestros requerimientos de que subsanara la omisión en cancelar los sellos *después* de ser separado de la notaría. Ante esa inacción, dijimos: "Enfatizamos una vez más la importancia de cancelar los sellos de rentas internas y notariales. Hemos señalado que 'se defrauda al erario cuando se persiste obstinadamente en no adherir a las escrituras los sellos de rentas internas que ordena el arancel notarial' ." Íd., págs. 73–74.

Reafirmamos una vez más la importancia que reviste la cuestión en protección de los intereses públicos y

privados confiados a los notarios. La omisión de cancelar los Sellos de Rentas Internas en escrituras o los impuestos de Asistencia Legal en los Registros de Afidávit es una infracción seria que debemos desalentar.

En primer lugar, priva a la Sociedad para Asistencia Legal de esos ingresos inmediatos, cuya razón de ser es su uso para gastos operacionales. Y segundo, más allá del aspecto fiscal, en lo sustantivo, el cancelar estos sellos "forma parte esencial e integral de la actividad notarial al certificar un afidávit". *Mojica Sandoz v. Bayamón Federal Savs.*, 117 D.P.R. 110, 130 (1986). En materia de Sellos de Rentas Internas, hasta tanto esos sellos no sean adheridos y cancelados, la validez de las escrituras o de las copias certificadas está en entredicho, pues las mismas son anulables. Art. 10 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2021; *Banco de Santander de P.R. v. Registrador*, 115 D.P.R. 44 (1984); *Rivera Cabrera v. Registrador*, 113 D.P.R. 661 (1982); *Inspector de Protocolos v. Dubón*, 107 D.P.R. 50 (1978); *Empire Life Ins. Co. v. Registrador*, 105 D.P.R. 136 (1976); *Sánchez v. Registrador*, 69 D.P.R. 474 (1949); *In re Feliciano*, supra; *In re Merino Quiñones*, supra; S. Torres Peralta, *La Nueva Ley Notarial de P.R.*, 48 (Núm. 3) Rev. C. Abo. P.R. 3, 104 (1987); P. Malavet Vega, *Manual de Derecho Notarial Puertorriqueño*, Ponce, Ed. Corripio, 1988, págs. 115–116.

Ante estas circunstancias, la subsanación de las deficiencias no descarta la sanción disciplinaria. Procede decretar su suspensión del ejercicio del notariado por el término de dos (2) años. *In re Aponte Arché*, 117 D.P.R. 837, 838 (1986).

*Se dictará la correspondiente sentencia.*

Los Jueces Asociados Señores Negrón García y Ortiz decretarían su suspensión indefinida.