EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>    Walter Colón Rivera | 2005 TSPR 107<br><br>165 DPR \_\_\_\_ |

Número del Caso: TS-10878


Fecha: 30 de junio de 2005


Oficina de Inspección de Notarías:

                    Lcda. Carmen H. Carlos
                    Directora

Abogado del Querellado:

                    Lcdo. Pedro Malavet Vega


Materia: Conducta Profesional
         (La suspensión del abogado advino final y firme el  día
         28 de julio de 2005.)




Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del proceso
de compilación y publicación oficial de las decisiones del
Tribunal. Su distribución electrónica se hace como un servicio
público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Walter Colón Rivera         TS-10878

PER CURIAM

San Juan, Puerto Rico, a 30 de junio de 2005.

El 18 de junio de 2004 la Oficina de Inspección de Notarias presentó ante este Tribunal un Informe sobre el estado de la notaría del Lcdo. Walter Colón Rivera. Tras varios trámites para subsanar las deficiencias señaladas, el 24 de mayo de 2005 la Oficina sometió moción en cumplimiento de orden, en torno a la comparecencia del Lcdo. Colón Rivera de 23 de julio de 2004, en la cual éste se expresó sobre las deficiencias señaladas e informó de las gestiones realizadas para corregirlas. El licenciado Colón Rivera compareció nuevamente el 5 de junio de 2005, reaccionando a la moción de la Oficina. Esta vez compareció representado por abogado.

La Oficina señala que de las cuatro deficiencias que el licenciado Colón Rivera no ha logrado subsanar, dos son insubsanables. Respecto a otra, discrepa del criterio del licenciado Colón Rivera, quien opina que no se configura defecto alguno.

La consideración del expediente y las alegaciones de la Oficina, junto a las comparecencias del Lcdo. Walter Colón Rivera, nos llevan a ordenar su suspensión de la práctica notarial por un término de tres (3) meses. Decretamos esta medida de carácter temporero movidos por el convencimiento de que no hubo en el ánimo del notario intención de subvertir su función y que, según explica en su última comparecencia, "en el proceso aprendió y aclaró todas sus dudas sobre la conducta a seguir y ... reorientó su práctica... hasta el punto de que sus protocolos posteriores al año en que surgieron los problemas, han cumplido bien y fielmente con las normas notariales y han sido debidamente aprobados por la Oficina de Inspección de Notarías."

I.

La Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, 4 LPRA sec. Et seq., le impone al notario una función dual. Por un lado, sirve como agente instrumental del documento notarial, por el otro, es un profesional del Derecho con el deber de asesorar y aconsejar legalmente a los otorgantes. In re Colón Ramery, 133 DPR 555 (1993).

El abogado notario representa la fe pública. Es el testigo por excelencia que da forma al convenio entre las partes. Como tal, tiene el deber afirmativo de dar fe expresa "de su conocimiento personal de los otorgantes o, en su defecto, de haberse asegurado de su identidad" por los medios establecidos en la ley. Además, deberá dar fe de la capacidad legal de los comparecientes para otorgar el acto o contrato de que se trate. Artículo 15, Ley Notarial, 4 LPRA 2033 (e).

Como parte de su función el notario tiene el deber de asesorar y advertir sobre los aspectos legales del instrumento que ante él se otorgan y que éste autoriza. El notario no es un simple observador de un negocio que ante él se otorga. Su función no se limita a cerciorarse de la identidad de las partes y de la autenticidad de sus fincas. El notario ostenta una función pública que "trasciende la de un autómata legalizador de firmas y penetra al campo de legalidad de la transacción que ante él se concreta." In re Colón Ramery, supra.

La labor notarial debe ser ejercida con sumo esmero, cuidado y celo profesional, cumpliendo estrictamente con la Ley Notarial y los Cánones de Ética Profesional. In re Pizarro Colón, res. el 25 de mayo de 2000, 2000 TSPR 106; In re Vera Vélez, res. el 5 de abril de 1999, 99 TSPR 46.

Dentro de estos parámetros normativos, examinemos lo sucedido en este caso.

II.

De los informes que constan en autos se desprende que en la escritura sobre Testamento Abierto del 3 de julio de 1997, el notario no dio fe de conocer al testador y no pudo corregir esta deficiencia, toda vez que al momento de la inspección el testador ya había fallecido.  En su más reciente comparecencia, el notario explica que:  "...tal hecho no había producido daño alguno. Los herederos tramitaron la correspondiente declaratoria de herederos y se dividieron la única propiedad existente....  Dicho error no se ha vuelto a cometer y el notario tiene perfectamente clara la necesidad de hacer constar dicho conocimiento en los documentos testamentarios."

Por otra parte, en la escritura número 45 sobre Compraventa, del 14 de noviembre de 2001 (folio 201), el compareciente Lalo José Martínez Cardona enajenó un bien inmueble perteneciente a los menores de edad José Martínez Rojas y José Enrique Martínez Rojas, por la suma de $30,000, sin obtener autorización judicial previa. Tampoco se justificó la capacidad representativa para comparecer en nombre de los menores. En su comparecencia, el notario informó que gestionó y obtuvo en el caso Núm. BEX 2003-0032 una Resolución del Tribunal de Primera Instancia, fechada 4 de marzo de 2004, que impartió su aprobación a la venta de los bienes y "ratific[ó] en todas sus partes" la Escritura Núm. 45 de 14 de noviembre de 2001. Indica que luego autorizó la Escritura Núm. 25 de 7 de julio de 2004, sobre Ratificación, en la cual comparecieron los padres de los menores para ratificar la transacción, anexándole a ésta la Resolución mencionada.

El notario hace hincapié en que a la fecha de la escritura original, el menor de los jóvenes envueltos en esta situación "iniciaba estudios universitarios." Además, informa que los menores, dos de ellos actualmente mayores de edad y el menor de ellos de 20 años, "declararon en la vista de autorización judicial y fueron representados por una procuradora de menores. Así lo dice expresamente la Resolución del Juez Superior Rubén Darío Bonilla del 4 de marzo de 2004, ya enviada a la Hon. Directora y a este Honorable Tribunal." En la Resolución indicada se informa lo siguiente:

1) La residencia de los menores se vendió porque estaba deteriorada y no habían recursos económicos para repararla.

2) El dinero producto de esta venta fue utilizado para la reparación de otra residencia propiedad de los padres de los menores de edad, ubicada en la Calle Betances #10 de Coamo, Puerto Rico.

3) Mediante escritura de Donación #43 con fecha de 23 de septiembre de 2003 ante el notario Walter Colón Rivera el Sr. Lalo José Martínez Cardona dona su parte ganancial de dicha residencia a sus hijos Lalo José Martínez Rojas, José Enrique Martínez Rojas e Irmaris Martínez Rojas.

4) Se presentó un documento de tasación de dicha residencia preparado por el tasador Humberto Martín Martínez, licencia #749, en la cual la propiedad donada tasa la cantidad de $55,000.00.

5) Los jóvenes Lalo José y José Enrique están de acuerdo que se le haya incluido a su hermana Irmaris en dicha donación.

6) Los solares en los que se encuentran ambas propiedades, tanto la vendida propiedad de los menores como la donada que pertenecía a Lalo José Martínez Cardona, pertenecen al Municipio de Coamo, por lo que no se vislumbran problemas ante el Registro.

En su decisión, el Tribunal de Primera Instancia señala que: "Ponderada la prueba y contando con la aprobación y consentimiento de la Procuradora de la Familia, este Tribunal encuentra que la venta de la propiedad perteneciente a los menores de edad se hizo en el mejor bienestar de los mismos y en vista de que ellos no fueron afectados imparte su aprobación y ratifica en todas sus partes la escritura de compraventa #45 del 14 de noviembre de 2001 ante el Notario Walter Colón Rivera."

La Oficina de Inspección de Notarías sostiene que según nuestro ordenamiento y la jurisprudencia que lo interpreta, la escritura original otorgada en ausencia de autorización judicial es insubsanable. Por su parte, el notario argumenta que los casos citados por la Directora de la Oficina son distinguibles del de autos. Aduce que en el caso F. Zayas, S. en C. V. Torres, 51 DPR 796 (1937) la intención de defraudar a los menores era evidente, contrario a lo sucedido en el caso de los menores Martínez Rojas. Asimismo entiende que In re López Olmedo, 125 DPR 265 (1990), por tratarse de una sentencia, no constituye precedente, como tampoco lo son las distintas opiniones concurrentes y disidentes allí emitidas, en las que se basa el Informe de la Oficina.

No tenemos que resolver esta controversia, sobre la cual, según resalta una de las opiniones concurrentes en In re López Olmedo, supra, en la pág. 293, "no hay unanimidad de criterios en este Foro apelativo", para resolver en torno a la conducta del notario al autorizar la escritura original de compraventa. Coincidimos con la Oficina de Inspección de Notarias en cuanto a

que la compraventa de los bienes en este caso requería obtener autorización judicial **previa**, para que el notario pudiera autorizar el negocio. Al no hacerlo así, el notario incumplió con un precepto fundamental en el ejercicio de su función: "dar fe y autenticidad conforme a las leyes de los negocios jurídicos [...] que ante él se realicen." Artículo 2 de la Ley Notarial, 4 LPRA 2002. Véase In re Jiménez Brackel, 148 DPR 287 (1999).[1]

III.

Por último, la Oficina de Inspección de Notarías trajo a nuestra atención el asiento 1844 del Registro de Testimonios del notario, sobre juramentación de traspaso y título de vehículo de

---

[1] El Código Civil, en su artículo 1211, 31 LPRA §3376, establece:

Ninguno puede contratar a nombre de otro sin estar por éste debidamente autorizado o sin que tenga por la ley su representación legal.

El contrato celebrado a nombre de otro por quien no tenga su autorización o representación legal será nulo, a no ser que lo ratifique la persona a cuyo nombre se otorgue antes de ser revocado por la otra parte contratante.

El artículo 158 del Código Civil, 31 LPRA §616, establece:

El ejercicio de la patria potestad no autoriza a ninguno de los padres para enajenar o gravar bienes inmuebles de clase alguna, o mueble cuyo valor exceda de dos mil dólares, pertenecientes al hijo y que estén bajo la administración de ambos o de cualquiera de ellos, sin previa autorización de la Sala del Tribunal de Primera Instancia en que los bienes radiquen, previa comprobación de la necesidad o utilidad de la enajenación o del gravamen y de acuerdo con lo dispuesto en la ley referente a procedimientos legales especiales.

motor.  En éste, el notario anota que Ángel Caraballo firma por José Burgos Avilés para traspasar el vehículo a Elizabeth Rosa Vélez. Aduce la Oficina que:

> Desde el punto de vista notarial, es imprescindible, en este tipo de declaraciones juradas la comparecencia personal y el conocimiento de los firmantes. Por tal motivo, que alguien firme por quien aún figura como titular del vehículo sin que se haga constar la documentación que evidencie su capacidad resulta, a nuestro entender, contrario a la garantía de legitimidad y confianza pública que la intervención notarial brinda en tales casos. Tal garantía requiere "que los notarios observen escrupulosamente el mandato de ley sobre comparecencia y conocimiento de los otorgantes, particularmente en instancias de traspasos de licencias de motor." In re Florentino Machargo Barreras, Opinión Per Curiam del 16 de marzo de 2004.

Aunque acepta que "este tipo de práctica de alguna manera se salva en el Registro de Vehículos de Motor del Departamento de Obras Públicas", la Oficina insiste en que "en cuanto a la responsabilidad del notario y la mejor práctica notarial no es suficiente dar fe del conocimiento personal de un firmante, sino también de la capacidad o carácter en que firma."

> Respecto a esto, el notario explica lo siguiente:

> El señor Ángel Caraballo acostumbraba adquirir vehículos reposeídos por instituciones bancarias, obtenía de las mismas los documentos necesarios de traspaso y luego vendía los mismos. En la fecha indicada, el propietario verdadero, que era Ángel Caraballo, suscribe un documento de traspaso de título a favor de Elizabeth Rosa Vélez. En la notificación contenida en el Índice Notarial se hace constar que quien firma es el señor Ángel Caraballo, según obra en el anejo II de la Moción de la Hon. Directora. En la indicada comparecencia de la Hon. Directora, parece implicarse que el vendedor firmante no tenía autoridad para hacerlo. Esto es un error.  Se trata de una práctica legal,

común y corriente del tráfico de automóviles, toda vez que las entidades que embargan el vehículo no pagado no siempre pueden conseguir que los dueños anteriores comparezcan para la firma del traspaso. **El notario se aseguró completamente de que el compareciente era el propietario real y estaba autorizado por el banco para realizar el traspaso.**" (Énfasis nuestro)

Hemos constatado que en su primer informe, del 15 de junio de 2004, la Oficina reconoce que "Caraballo tenía autorización escrita y era dueño para todos los efectos de esos vehículos, **de acuerdo a declaraciones juradas en la que el propietario deudor le cedía sus derechos al banco y el banco mediante declaraciones juradas cedía sus derechos al señor Caraballo. En todos y cada uno de los testimonios se le requería esa documentación** y entonces se procedía a firmar por el que aparecía en la licencia que no era el dueño." (Énfasis nuestro). Además, en ese informe se establece, en una nota al calce, que "**el notario acompañó copia de documentos acareditativos de la cesión de derechos al señor Caraballo.**" (Énfasis nuestro).

Podemos estar de acuerdo en que el notario debió hacer constar lo anterior con mayor claridad en el documento notarizado y en la notificación mediante el índice, pero nos parece evidente que no hacerlo fue más bien un error de expresión y no un acto impropio o ilegal.

Considerado todo lo anterior, se dictará sentencia mediante la cual se suspenderá al Lcdo. Walter Colón Rivera del ejercicio de la notaría por el término de tres (3) meses y hasta que otra cosa disponga este Tribunal.  Se ordena a la

Oficina del Alguacil que incaute su obra notarial para el trámite de rigor correspondiente por la Directora de Inspección de Notarías.

Se dictará la Sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:



Walter Colón Rivera              TS-10878





SENTENCIA


San Juan, Puerto Rico, a 30 de junio de 2005.


Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integral de la presente, se dicta Sentencia y se suspende al Lcdo. Walter Colón Rivera del ejercicio de la notaría por el término tres (3) meses, contados desde la notificación de la presente.

Se ordena a la Oficina del Alguacil que incaute la obra notarial del licenciado Colón Rivera para que sea remitida y examinada y oportunamente objeto de un Informe por parte de la Oficina de Inspección de Notarías.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no intervino.


                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo