per curiam:
Ramón Flores Castro fue admitido al ejercicio de la abogacía el 26 de junio de 1973 y al de la notaría el 10 de agosto del mismo año.
El 11 de enero de 2007, la Directora Interina de la Oficina de Inspección de Notarías trajo a nuestra atención el estado de la notaría del licenciado Flores Castro. Según los informes y documentos correspondientes, los Protocolos de Flores Castro para 1999, 2001 y 2003 fueron aprobados con deficiencias. En efecto, según surge de un escrito del propio notario, éste tuvo que otorgar numerosos instrumentos públicos nuevos para subsanar los múltiples errores cometidos en muchos documentos anteriores. De la deficiente obra notarial aludida resalta particularmente una escritura sobre testamento abierto de 1999, en la cual el notario no da fe de la capacidad legal de la testadora. Ello, claro está, hace nulo el testamento en cuestión, según lo dispuesto en el Art. 636 del Código Civil, 31 L.P.R.A. sec. 2152, y la jurisprudencia pertinente. Véanse: Deliz et als. *803 v. Igartúa et als., 158 D.P.R. 403 (2003); Rivera Pitre v. Galarza Martínez, 108 D.P.R. 565 (1979).
La grave falta aludida en el párrafo anterior no pudo ser subsanada mediante la autorización de un nuevo testamento debido a que falleció la testadora.
También resalta otra escritura de testamento del 2003, en la cual se identificó de forma dual al testador. Tampoco pudo ser subsanada porque falleció el testador.
Por todo lo anterior, el 2 de febrero de 2007, mediante Resolución, le concedimos un término al notario para ex-presarse con respecto al informe de la Oficina de Inspección de Notarías presentado ante nos el 11 de enero de 2007, y referido antes. Flores Castro compareció el 23 de febrero de 2007 y, en esencia, alegó que las faltas en las que incurrió fueron involuntarias; por inadvertencia; que la situación le ha ocasionado “gran preocupación y males-tar emocional”; que en casi todos los casos no se le ha causado daño a ningún otorgante, y que en el caso del testamento de 1999, aunque ha sido demandado por familiares de la testadora, su compañía de seguro está atendiendo el asunto y “se trabaja en la transacción permisible”.
I
Reiteradamente hemos resuelto que por la esencia pública de su función, los notarios están llamados a ser sumamente cautelosos en el ejercicio de su práctica. Deben cerciorarse siempre de que los documentos públicos que autorizan cumplan con todas las formalidades de la ley. In re Bryan, Vargas, 150 D.P.R. 1 (2000); In re Vera Vélez, 148 D.P.R. 1 (1999); In re Rodríguez Báez, 129 D.P.R. 819 (1992).
Anteriormente hemos resuelto también que corresponde suspender al notario del ejercicio de la notaría cuando su obra notarial refleja una serie de deficiencias de naturaleza seria y de carácter continúo y repetitivo, sobre todo cuando algunas de éstas son tan graves como para *804 afectar la eficacia del documento mismo. In re Madera Acosta, 144 D.P.R. 743 (1998).
En el caso de autos, surge claramente de la obra notarial en cuestión una conducta profesional descuidada. Muchos de los documentos públicos de este notario han estado afectados por deficiencias. Si bien ha logrado subsanar casi todos, lo anterior no impide que se imponga una sanción disciplinaria, sobre todo cuando en el caso de las dos escrituras de testamento referidas, la subsanación no ha sido posible. Véase In re Flores Torres, 125 D.P.R. 159 (1990).
Vistas las sanciones impuestas en In re Madera Acosta, supra, e In re Colón Rivera, 165 D.P.R. 148 (2005), que son pertinentes aquí, se dictará sentencia para suspender al Ledo. Ramón Flores Castro del ejercicio de la notaría por el término de un (1) año y hasta que otra cosa disponga este Tribunal. El Alguacil de este Tribunal deberá incautarse de la obra y del sello notarial del abogado suspendido y los entregará a la Directora de la Oficina de Inspección de Notarías para la correspondiente investigación e informe.

Se dictará sentencia de conformidad.