EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| | 2021 TSPR 39 |
| Enmiendas al Reglamento Notarial | 206 DPR _____ |
| | |

Número del Caso:  ER-2021-01

Fecha:  25 de marzo de 2021

Materia:  Resolución del Tribunal.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*


Enmiendas al Reglamento Notarial    ER-2021-01


RESOLUCIÓN

En San Juan, Puerto Rico, a 25 de marzo de 2021.

Con el propósito de actualizar las propuestas consignadas en el Informe de la Comisión para el Estudio y Evaluación de la Función Notarial en Puerto Rico, presentado en 2010, este Tribunal reconstituyó la Comisión para el Estudio y Evaluación de la Función Notarial en Puerto Rico (Comisión Notarial), adscrita al Secretariado de la Conferencia Judicial y Notarial (Secretariado). In re Com. Estudio y Eval. Fun. Notarial, 197 DPR 1 (2016).

En cumplimiento con la encomienda delegada, el 30 de abril de 2019 se presentó el Segundo Informe de la Comisión para el Estudio y Evaluación de la Función Notarial en Puerto Rico (Segundo Informe), el cual contiene múltiples propuestas de enmiendas al ordenamiento jurídico notarial. En febrero de 2020 culminó la primera etapa del proceso de consideración de estas propuestas, mediante la aprobación de enmiendas atinentes a la formación académica y al desarrollo profesional continuo necesario para garantizar que quienes conforman el notariado puertorriqueño cuenten con la más alta capacidad para brindar servicios de calidad a la comunidad e imprimirles certeza y seguridad a los negocios jurídicos. In re Enmiendas Reglamentos TS, 203 DPR 966

(2020). A su vez, autorizamos la divulgación del Segundo Informe entretanto evaluábamos la totalidad de las recomendaciones consignadas, en reconocimiento de que este documento constituye una valiosa aportación para el notariado en Puerto Rico.

Ante la importancia de mantener la revisión continua del ordenamiento notarial, recientemente constituimos por vez primera al Comité Asesor Permanente de Reglamento Notarial (Comité Asesor), el cual se creó desde 1996 como un organismo asesor adscrito al Secretariado. *In re Conferencia Judicial I*, 142 DPR 70 (1996). Este Comité Asesor quedó conformado por los notarios y las notarias que se designaron como miembros de la Comisión Notarial. *In re Com. Estudio y Eval. Fun. Notarial*, 2020 TSPR 137, 205 DPR ___ (2020).

Con el apoyo del Comité Asesor y del Secretariado, este Tribunal continuó con la consideración y el estudio detenido de las propuestas consignadas en el Segundo Informe. Concretamente examinamos su cuarto capítulo, en el cual se incorporan las propuestas relativas al tema de la Práctica Notarial. Estas enmiendas persiguen promover una práctica notarial eficiente y alineada con los principios fundamentales del notariado puertorriqueño.

Concluido el estudio de estas propuestas, hoy aprobamos un total de dieciocho enmiendas al Reglamento Notarial y derogamos su Regla 16. De esta forma, se actualiza el ordenamiento procesal notarial a tono con los retos actuales de la práctica de la notaría y se facilita el descargue y la supervisión de la función pública delegada al notario y a la notaria en Puerto Rico.

A continuación, se enumeran las reglas enmendadas y se atemperan sus comentarios explicativos para observar congruencia en el Reglamento Notarial.

1. Se enmienda la Regla 2 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, para que disponga lo siguiente:

**Regla 2. Doble carácter de la función notarial**

Integran el notariado puertorriqueño todos los notarios de Puerto Rico admitidos y los que en adelante fueren admitidos por el Tribunal Supremo de Puerto Rico a ejercer ese ministerio.

El notario es el profesional del derecho que ejerce una función pública que consiste en recibir, interpretar y dar forma legal a la voluntad de las partes, dar fe de hechos, redactar

los instrumentos adecuados a ese fin, conferirles autenticidad, conservar los originales de éstos y expedir copias que den fe de su contenido, y cumplir con cualquier otra función delegada por ley.

En su función pública ejerce la fe pública notarial que tiene y ampara un doble carácter:

(A)   En la esfera de los hechos, la exactitud de lo que el notario ve, oye o percibe por sus sentidos, y

(B)   en la esfera del Derecho, confiere autenticidad y fuerza probatoria a las declaraciones de voluntad de las partes en el instrumento público redactado conforme a su juicio sobre los preceptos del ordenamiento jurídico para la validez y eficacia del acto o contrato formalizado, y sobre la identidad y capacidad de las partes.

.     .     .     .     .     .     .

2. Se enmienda la Regla 5 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 5. Función dual de abogado y notario**

La práctica de la profesión de la abogacía puede ser en algunas ocasiones incompatible con la práctica de la notaría.

El notario autorizante de un documento público está impedido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las contraprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él.

El notario está impedido de representar como abogado a un cliente en la litigación contenciosa y, a la vez, servir de notario en el mismo caso por el posible conflicto de intereses o incompatibilidades que puedan dimanar de éste.

El abogado que compareció en representación de la parte demandante, del adjudicatario o comprador en un proceso legal relativo al de

pública subasta o como oficial autorizado de estos últimos en este proceso no podrá autorizar la escritura de venta judicial en su capacidad de notario.

Las normas recogidas en los párrafos precedentes aplicarán al notario personalmente y no a aquellos notarios y abogados que sean o hayan sido sus socios o compañeros de oficina. No obstante, las personas socias o compañeras de oficina del notario autorizante no podrán representar a una parte otorgante en un documento público autorizado por éste, cuando en un litigio se impugne la validez de cualquiera de los acuerdos que surgen del documento o se alegue que se omitieron acuerdos relativos al asunto objeto de éste, o cuando por alguna otra razón se cuestione la actuación del notario autorizante.

.    .    .        .      .      .  .

**Comentarios.**

El propósito de esta regla es exponer la norma general de incompatibilidad entre las funciones de la abogacía y de la notaría cuando ambas intervenciones se dan sobre el mismo asunto. Además, se ofrecen ejemplos específicos de circunstancias en las que la intervención dual queda prohibida y de otras en que, por excepción, se permite esa intervención dual.

El primer párrafo de la regla expone la norma sobre incompatibilidad según expresada por el Tribunal Supremo en In re Colón Ramery, 138 DPR 793 (1995) (Reconsideración).

El segundo párrafo refleja la norma sentada en 1993 con In re Colón Ramery, 133 DPR 555 (1993), que impide que un notario que haya autorizado un documento público pueda luego representar como abogado a uno de los otorgantes para reclamar contraprestaciones que deriven del documento público. Como indica el quinto párrafo de la regla, esta norma no se hace extensiva a las personas socias o compañeras de oficina del notario, por efecto de lo decidido por el Tribunal en reconsideración en el mismo caso en 1995, excepto cuando durante un litigio contencioso se cuestione la actuación del notario autorizante, o la validez de algunos de los acuerdos que surgen del documento, o se alegue la existencia de otros acuerdos omitidos del documento público. En estas situaciones los

socios o asociados del notario autorizante no podrían representar a ninguna de las personas otorgantes.

El tercer párrafo de la regla describe una instancia de la prohibición general y recoge la norma jurisprudencial esbozada por el Tribunal en B. & L., Inc. v. P. R. Cast. Steel Corp., 114 DPR 808 (1983), aunque ya intimada desde 1906 en Negrón et al. v. El Superintendente de Elecciones, 11 DPR 366 (1906), a los efectos de que el abogado en la litigación contenciosa no debe ejercer como notario en esa litigación. El Tribunal en B & L., Inc. v. P.R. Cast. Steel Corp., supra, sostuvo, sin embargo, que la responsabilidad del notario es personalísima, razón por la cual la regla no hace extensiva la norma a los socios y compañeros de oficina.

La norma expuesta no deber entenderse como que precluye la operación de la R. 25, Ap. V del Título 32. 32 LPRA Ap. V. De acuerdo con esta regla, un notario, incluso cualquiera de quienes estén involucrados en un litigio, puede tomar juramentos en tomas de deposición. Distinto a una contestación a interrogatorio, por ejemplo, donde la intervención del abogado como notario autenticador de firmas queda proscrita (debido a que la libertad que tiene el abogado para escoger el lenguaje que se utilizará en el documento podría ocasionar discrepancias entre éste y su cliente y derivar en procedimientos posteriores), la intervención del abogado como parte de su práctica de la notaría en una toma de deposición resulta de un acuerdo entre las partes para que uno de los abogados actúe en su función notarial. Además, se trata de una intervención neutral, *sui géneris*, en la que realmente el notario no interviene como tal, sino como funcionario investido por la Ley del poder de tomar juramentos.

Por su parte, el cuarto párrafo de esta regla establece que el abogado que haya comparecido en el proceso legal en representación de la parte demandante, del adjudicatario o de la parte compradora, o haya comparecido como oficial autorizado de estos últimos en el proceso de pública subasta, no podrá autorizar la escritura de venta judicial en su capacidad de notario o notaria. De esta forma se reconoce esta prohibición a tono con lo dispuesto en el Art. 112 de la Ley del Registro de la Propiedad Inmobiliaria, 30 LPRA sec. 6149.

Por otro lado, el sexto párrafo especifica las excepciones a la norma general que prohíbe la función dual de abogado-notario. Estas también se recogen del caso In re Colón Ramery, 138 DPR 793 (1995) (Reconsideración). Se dispone en la regla que esa función dual podrá ejercerse en acciones *ex parte*, a menos que el ejercicio de esa función esté expresamente prohibido por ley o doctrina jurisprudencial. Se considera que, en estas situaciones, aun cuando las intervenciones del abogado-notario sean duales y traten sobre el mismo asunto, no está presente la posibilidad de conflicto entre funciones, puesto que no existe controversia ni contención alguna entre partes. Esta norma permite, por ejemplo, que un abogado que haya instado una Declaratoria de Herederos en el tribunal luego pueda autorizar una escritura de partición. Sin embargo, tal y como indica la regla, la norma no permitirá la intervención dual cuando exista una prohibición en ley. Así, pues, si el abogado que ha instado la Declaratoria de Herederos es pariente de una de las partes dentro de los grados de consanguinidad que prohíbe la sec. 2005 de este título, no podrá autorizar la escritura de partición correspondiente.

Se excluyen, además, de la norma general los recursos gubernativos, ya que la propia Ley del Registro de la Propiedad Inmobiliaria, 30 LPRA secs. 6401 et seq., permite que el notario que otorgó el documento en controversia represente como abogado a la parte interesada en ese documento.

La segunda excepción a la norma general prohibitoria se halla en el séptimo párrafo de la regla y es producto de lo decidido por el Tribunal Supremo en In re Cardona Álvarez, 133 DPR 588 (1993), y Santiago v. Echegaray, 137 DPR 1010 (1995). La premisa que permite la excepción en los casos de autenticación de firmas es que en una declaración de autenticidad el notario no asume responsabilidad alguna por el contenido del documento privado cuyas firmas legitima. Sin embargo, una vez esté en controversia la firma de una parte o el documento privado sea objeto principal de una reclamación, entonces, el notario no podrá intervenir en el ejercicio de la abogacía.

3. Se enmienda la Regla 11 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 11. Notificación de dirección residencial y profesional**

Toda persona, una vez admitida al notariado, notificará inmediatamente al Secretario del Tribunal Supremo de Puerto Rico y a la Oficina de Inspección de Notarías, el lugar de su residencia, su dirección postal profesional y la localización de la oficina donde conservará el Protocolo de Instrumentos Públicos y el Registro de Testimonios, además de sus números de teléfono y fax, y su correo electrónico, en caso de tenerlo.

Asimismo, notificará cualquier cambio de residencia, de dirección postal o de localización de su oficina notarial y de sus números de teléfono y fax, y su correo electrónico dentro de los cinco (5) días laborables siguientes a la fecha del cambio. La notificación de estos cambios podrá hacerse por correo, o por vía electrónica conforme establezcan las instrucciones que emita la Oficina de Inspección de Notarías.

Si tuviere Protocolo de Instrumentos Públicos, deberá entregar personalmente o remitir a la Oficina de Inspección de Notarías, la solicitud de autorización para el traslado de sus Protocolos en conformidad con lo dispuesto en el Art. 53 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2077, y la Regla 58 de este Reglamento, supra.

**Comentarios.**

Conforme a lo dispuesto en esta regla, se requiere que el notario notifique al Secretario del Tribunal Supremo, así como a la Oficina de Inspección de Notarías su lugar de residencia, su dirección postal profesional, la localización de la oficina donde conservará el Protocolo de Instrumentos Públicos y el Registro de Testimonios. De igual forma, notificará sus números de teléfono y fax, y su correo electrónico, en caso de tenerlo.

Asimismo, esta regla resalta la obligación de los notarios de solicitar autorización previa para el traslado de su Protocolo.

4. Se enmienda la Regla 14 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 14. Pago de derechos y honorarios**

(1)   <u>Pago de derechos</u>.

    (a)   Todo derecho de arancel o de otra índole que conforme a la ley devengue el instrumento público, tanto en el original como en sus copias certificadas, y en su caso, los de inscripción en los registros correspondientes, será sufragado por las partes interesadas en conformidad con lo dispuesto en el Derecho vigente. El notario autorizante recibirá el día del otorgamiento los sellos correspondientes a la escritura matriz o su valor, excepto lo dispuesto en el inciso (d) de esta regla.

    (b)   El pago de derechos arancelarios en los asuntos no contenciosos ante notario se realizará en conformidad con lo establecido en el Art. 13 de la Ley de Asuntos No Contenciosos Ante Notario, 4 LPRA sec. 2166.

    (c)   El notario podrá rehusar autorizar el instrumento público hasta tanto el pago de los derechos arancelarios se satisfaga de acuerdo con lo establecido por ley.

    (d)   El pago de derechos arancelarios en los instrumentos públicos sujetos a un periodo de rescisión en un periodo de tiempo determinado, conforme a las disposiciones del *Truth in Lending Act*, quedará en suspenso hasta tanto trascurra ese término. El notario hará constar mediante Acta Notarial o diligencia subsanatoria el ejercicio del derecho de rescisión, para dejar sin efecto el instrumento público. En estos casos, el Acta Notarial estará exenta del pago de todo derecho arancelario, incluyendo el Impuesto Notarial.

(2)   <u>Aranceles Notariales</u>.

    Son aranceles notariales aquellos que devengará el notario por la autorización de instrumentos públicos, los cuales serán de naturaleza fija dentro de los parámetros dispuestos en el Art. 77 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2131. La reglamentación del arancel notarial obliga a su estricto cumplimiento al notario y a todas las partes. Las normas complementarias consignadas en este artículo establecen las

consecuencias por el incumplimiento del arancel notarial establecido tanto para el notario como para terceros.

(3)  Honorarios Extraarancelarios.

El notario, además de percibir el arancel notarial dispuesto anteriormente, podrá devengar honorarios extraarancelarios por las gestiones previas y preparatorias, e incluso posteriores, a la autorización del instrumento público, según descrito en el Art. 78 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2132. Éstos serán pactados, únicamente, por acuerdo entre las partes comparecientes y el notario, y no admitirán interferencia indebida de terceras personas.

**Comentarios.**

Esta regla resalta la importancia de que se satisfaga el pago de los derechos arancelarios de acuerdo con lo establecido por ley. De igual forma, establece que el notario autorizante deberá recibir el día del otorgamiento los aranceles correspondientes a la escritura matriz o su valor.

Se regula igualmente el pago de derechos arancelarios en los instrumentos públicos sujetos a un periodo de rescisión conforme a las disposiciones del *Truth in Lending Act*; la naturaleza arancelaria tarifaria de los honorarios notariales, y sobre los honorarios extraarancelarios que podrá percibir el notario de conformidad con las disposiciones del Art. 78 de la Ley Notarial de Puerto Rico, supra.

El notario que no cancele las estampillas establecidas por ley está sujeto a sanciones y a acción disciplinaria, todo ello sin menoscabo de su responsabilidad legal. In re Flores Torres, 125 DPR 159 (1990).

5. Se deroga la actual Regla 16 del Reglamento Notarial de Puerto Rico, supra.

6. Se enmienda la Regla 18 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 18. Notario sustituto**

El notario podrá designar, en caso de enfermedad o ausencia, a otro notario para que le sustituya. Tal designación será notificada por

escrito o por la vía electrónica, de manera conjunta o individualmente, a la Oficina de Inspección de Notarías, previo al inicio de la sustitución, y no excederá los términos permitidos en el Art. 9 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2013.

El notario sustituto velará por la integridad y protección de los Protocolos y Registros de Testimonios del notario sustituido, pero no los removerá de su oficina.

El notario sustituto no podrá autorizar instrumentos públicos o testimonios en nombre del notario sustituido.

El notario sustituto no rendirá índices por el término de ausencia del notario sustituido. No obstante, el notario sustituto deberá rendir un Índice por el período transcurrido durante el mes y hasta la fecha en que comenzó la sustitución.

Cuando el notario sustituto reciba una escritura de adhesión relacionada con una escritura principal otorgada ante el notario sustituido y en la que fue efectuada la oferta, el notario sustituto se limitará a hacer constar mediante nota al margen o al final de la escritura principal la existencia de la escritura de adhesión, identificando ésta con un número, fecha y el nombre del notario autorizante, así como a notificar a la persona oferente de la aceptación de su oferta según lo requiere el Art. 33 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2051.

**Comentarios.**

La función básica del notario sustituto es velar por la integridad de los documentos notariales del notario sustituido y expedir de éstos copias simples o certificadas. El acto de autorizar documentos públicos es una función indelegable del notario, que por lo tanto no puede delegarse al notario sustituto.

Esta regla permite que, previo al inicio de la sustitución, la designación de un notario sustituto pueda realizarse de manera individual o conjunta, por escrito o por la vía electrónica, conforme establezcan las instrucciones que emita la Oficina de Inspección de Notarías.

7. Se enmienda la Regla 23 del Reglamento Notarial de Puerto Rico, _supra_, para que disponga lo siguiente:

**Regla 23. Requisitos generales respecto al idioma en la redacción**

Los instrumentos públicos deberán ser redactados en español, en inglés o en ambos idiomas.

Si el notario y las personas comparecientes conocieren otro idioma, además del español o el inglés, deberá entonces el notario redactar el instrumento en español o inglés y podrá también hacerlo en el otro idioma.

Cuando una o más de las personas comparecientes desconocieren el español y el inglés, y el notario conociere el idioma de ésta, deberá entonces el notario redactar el instrumento en español o inglés. En estos casos, el notario podrá también redactar el instrumento en el idioma que conozca la persona o personas comparecientes, o utilizará los servicios del intérprete a que se refiere el párrafo siguiente.

Cuando el notario desconozca el idioma de una o más de las personas comparecientes, y éstas a su vez desconozcan el español y el inglés, deberá entonces el notario redactar el instrumento en español o inglés. En estos casos, el notario deberá hacer uso de una persona que haga las funciones de intérprete y traductora. Esta persona comparecerá como testigo instrumental en la autorización del instrumento público para hacer las traducciones verbales y por escrito que fueren necesarias, y declarará bajo su responsabilidad la fidelidad de la traducción en el instrumento público.

**Comentarios.**

Esta regla establece el idioma en que el notario podrá redactar el instrumento público. Lo que en ella se dispone no tiene el propósito de intervenir, en forma alguna, con la independencia del notario al decidir respecto a la autorización de un instrumento público. El primer párrafo dispone como norma general que el notario deberá redactar el instrumento público en español, inglés, o en ambos idiomas a su opción.

El segundo párrafo recoge la situación en que tanto el notario como los comparecientes conocen otro idioma además del español y el inglés. En esta situación el notario, a su opción, podrá redactar el instrumento también en dicho idioma.

El tercer párrafo brinda una opción al notario que conoce el idioma de uno o más de los comparecientes cuando éstos a su vez desconocen el español y el inglés. El notario deberá redactar el instrumento en español o inglés. Además, con respecto al tercer idioma se le reconoce al notario la opción de redactarlo él conforme su conocimiento o utilizar los servicios de un intérprete conforme lo dispuesto en el cuarto párrafo.

.     .     .     .     .     .     .     .

8. Se enmienda la Regla 24 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 24. Traducciones verbales por el notario**

Cuando algún compareciente en el instrumento público solamente entendiera el español y alguno o los demás comparecientes solamente entendieran el inglés, el notario podrá autorizar, a su discreción y con el consentimiento expreso de los comparecientes, el instrumento en español o en inglés solamente. El notario hará constar en el instrumento tal consentimiento expreso, que les ha traducido verbalmente su contenido al otro idioma y que, según su mejor saber y entender, éste refleja fielmente la voluntad de los comparecientes.

.     .     .     .     .     .     .     .

9. Se enmienda la Regla 25 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 25. Requisitos generales de las escrituras matrices**

Al expresar el sitio donde radica su notaría, bastará con que el notario exprese el municipio.

El notario expresará el nombre completo de las personas comparecientes. Éste comprende los dos apellidos de éstas. Podrá indicar, además, los otros nombres y apellidos por los que fueren

conocidas. La comparecencia con el uso de una letra o con un solo apellido será considerado como que constituye el nombre completo de la persona compareciente.

Cuando no fuere necesaria la comparecencia del cónyuge de una persona otorgante, el único dato requerido es el nombre completo de ésta.

Si la persona otorgante fuere una persona jurídica, no será necesario incluir el nombre del cónyuge de quien comparece en carácter representativo o como testigo.

.     .     .     .     .     .     .     .

10. Se enmienda la Regla 39 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 39. Acta de subsanación; nota marginal; diligencia subsanatoria**

(1) *Acta de Subsanación.-* Es el instrumento que redacta el notario, sin intervención de las partes otorgantes y sin perjuicio de una tercera persona, para corregir los defectos u omisiones de los que adolezca un instrumento público previo. El notario hará constar en el acta que la subsanación obedece a datos o a hechos que presenció o que de otro modo le constan personalmente y que no afectan el negocio jurídico.

.     .     .     .     .     .     .     .

(2) *Subsanación en documentos notariales.-*

.     .     .     .     .     .     .     .

(d) El notario podrá corregir por diligencia en la escritura matriz o por medio de acta notarial la falta de iniciales de las partes otorgantes o testigos de conocimiento en uno o más de los folios de un instrumento público otorgado previamente. La autorización del acta exige la comparecencia solamente de las personas cuyas iniciales no fueron incluidas en el instrumento público matriz.

Si la corrección fuera por acta notarial, el notario indicará al margen de los folios del instrumento público matriz, bajo su fe, firma, signo y sello notarial, la autorización del acta.

Esta nota al margen indicará, además, el número de orden y nombre del instrumento público matriz y el día, mes, año y lugar en que fue otorgado.

En caso de que el notario no sea quien autorizó el documento previo, deberá notificar el hecho subsanado al notario autorizante o, en su caso, al Archivo Notarial.

.    .    .    .    .    .    .    .

**Comentarios.**

El propósito de esta regla es establecer la forma de corregir los errores en los instrumentos públicos, ya sea mediante el acta de subsanación o la diligencia subsanatoria. Estos mecanismos permiten corregir errores o suplir omisiones que no afecten el negocio jurídico (consentimiento, objeto y causa).

Al otorgamiento de un acta de subsanación no tienen que comparecer las partes del instrumento previamente autorizado ni estampar sus firmas. Véase el primer párrafo de esta regla que identifica los requisitos y las cualidades del acta de subsanación.

Además, se establece la obligación del notario de notificar al notario autorizante o al Archivo Notarial, según proceda, el hecho que subsane un defecto u omisión en un documento previo que no autorizó.

La escritura de rectificación, por el contrario, requiere la comparecencia de todas las partes nuevamente para corregir o enmendar deficiencias que están directamente relacionadas o afectan el negocio jurídico de un instrumento previamente autorizado. Comúnmente la escritura de rectificación es conocida como "acta aclaratoria", denominación jurídicamente errónea.

11. Se enmienda la Regla 45 del Reglamento Notarial de Puerto Rico, _supra_, para que disponga lo siguiente:

**Regla 45. Anulabilidad de instrumentos públicos**

Además de los casos expresados en la ley, serán anulables, sin afectar el negocio jurídico, los instrumentos en que falten:

(A)    Las iniciales de uno o más de los comparecientes o las huellas de algún otorgante,

en caso de ser necesarias, al margen de uno o más folios, excepto en los casos en que se hubiere salvado la omisión según se dispone en la Regla 39, o

    (B)    las estampillas correspondientes.

.    .    .    .    .    .    .

12. Se enmienda la Regla 49 del Reglamento Notarial de Puerto Rico, *supra*, para que disponga lo siguiente:

**Regla 49. Certificación de copia**

(A) La certificación de una copia será efectuada al final o a continuación del instrumento. En el caso de que hayan sido incorporados documentos al instrumento, la certificación los incluirá y ésta será efectuada al final o a continuación de éstos. Si la certificación no apareciera al final o al dorso del último folio del instrumento o de los documentos incorporados a éste y constara en página separada, deberá incluir el número y la fecha del instrumento público, lo que podrá expresarse en guarismos.

(B) La certificación expresará el número de folios del instrumento, incluso de los folios de los documentos que le hayan sido incorporados. Será suficiente con indicar en guarismo los folios que éste contiene sin considerar el reverso, aunque esté escrito y numerado.

(C) La certificación de una copia expresará que en el original aparecen:

    (1)  Las firmas e iniciales de las personas comparecientes.

    (2)  La firma, la rúbrica, el signo y el sello del notario.

    (3)  La cancelación de las estampillas de rentas internas y del impuesto notarial.

(D) La certificación indicará, además:

    (1)  El número de folios que comprende.

(2)  La certificación de concordancia total o parcial con el original. En caso de certificación parcial, el notario hará constar que en lo omitido no hay nada que restrinja, modifique o condicione lo insertado.

(3)  El número que en el orden de secuencia le corresponda según la cantidad de copias expedidas.

(4)  El lugar y la fecha de su expedición.

(5)  El nombre de la persona a favor de quien es expedida la copia.

(6)  Que los documentos incorporados son copia fiel y exacta de los originales unidos a la matriz.

(E)  Todos los folios de la copia certificada, incluso los incorporados, llevarán el sello y la rúbrica del notario. Si el reverso estuviere escrito, bastará con que el notario rubrique y selle el anverso, excepto cuando el reverso constituya el final o el cierre del instrumento público.

.     .     .     .     .     .     .

13. Se enmienda la Regla 54 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 54. Notas de apertura y cierre del Protocolo**

La nota de apertura relacionada en el Art. 50 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2074, será hecha en la primera cara del primer instrumento.

La nota de cierre se colocará inmediatamente después del texto del último folio del último instrumento o en su dorso o, de no haber espacio, en un folio aparte.

.     .     .     .     .     .     .

**Comentarios.**

El propósito de esta regla es aclarar el Art. 50 de la Ley Notarial de Puerto Rico, supra. En

este artículo existe un error que lleva a confusión, ya que parece indicar que es necesario hacer una nota de apertura en cada documento del Protocolo. Sabido es que la nota de apertura del Protocolo será hecha en la primera cara del primer instrumento.

De igual modo, se explica dónde ubicará la nota de cierre del Protocolo.

14. Se enmienda la Regla 57 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 57. Tomos; cantidad de folios**

Al finalizar el tercer mes de cada año deberá quedar encuadernado el Protocolo del año anterior con su correspondiente índice de contenido para cada tomo. Cada tomo podrá contener hasta un máximo de quinientos (500) folios. No está permitido el fraccionamiento de un instrumento, salvo con la autorización escrita del Director de la Oficina de Inspección de Notarías.

**Comentarios.**

Esta regla dispone el término que deberá observar el notario para la encuadernación del Protocolo y aclara cuál es el número máximo de folios que puede contener cada tomo.

15. Se enmienda la Regla 58 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 58. Traslado del Protocolo**

El notario, antes de trasladar físicamente los Protocolos de la oficina o del lugar donde los tenga bajo su custodia, deberá obtener la debida autorización del Director de la Oficina de Inspección de Notarías o una orden judicial para removerlos.
La solicitud para el traslado de los Protocolos y la notificación de traslado por emergencia se harán por escrito y serán presentadas personalmente, por correo certificado con acuse o mediante el uso de medios y formatos electrónicos, en conformidad con las instrucciones que emita la Oficina de Inspección de Notarías.

En caso de una emergencia, que ponga en peligro la integridad del Protocolo y Registro de

Testimonios, el notario deberá trasladarlos a sitio seguro y protegido sin la autorización previa del Director de la Oficina de Inspección de Notarías. En tal caso, deberá notificar inmediatamente al Director de la Oficina de Inspección de Notarías y explicar la emergencia que a su juicio justificó tal actuación y la dirección a la cual fueron trasladados.

**Comentarios.**

El notario es responsable como custodio de la integridad de los Protocolos, ya que éstos pertenecen al Estado. La falta de diligencia en el cuidado y conservación del Protocolo puede conllevar la imposición de medidas disciplinarias.

La regla exige que antes del traslado físico de los Protocolos se obtenga la autorización del Director de la Oficina de Inspección de Notarías o una orden judicial.

Esta regla permite la presentación electrónica de la solicitud de traslado del Protocolo, según las instrucciones que emita la Oficina de Inspección de Notarías.

16. Se enmienda la Regla 76 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 76. Instrucciones generales a los notarios y las notarias**

La Oficina de Inspección de Notarías podrá emitir instrucciones generales a los notarios y las notarias, que sean de su competencia, las cuales servirán de guía y orientación en relación con la función notarial. Las instrucciones estarán subordinadas a las leyes, los reglamentos y la jurisprudencia aplicables. En ningún caso las instrucciones servirán de fundamento para un señalamiento de falta de un inspector.

Las instrucciones generales serán difundidas oportunamente a los notarios y las notarias.

El Director de la Oficina de Inspección de Notarías deberá tener disponible para inspección de los notarios, y el público en general, un compendio actualizado de tales instrucciones generales.

**Comentarios.**

Esta regla enfatiza que las instrucciones generales a los notarios que emite la Oficina de Inspección de Notarías servirán de guía y orientación en torno a la función notarial. Sin embargo, no constituirán fundamento para señalamientos de falta en el procedimiento de inspección que regula la Regla 77 de este Reglamento o para iniciar un proceso disciplinario.

17. Se enmienda la Regla 77 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 77. Procedimiento ordinario de inspección de protocolos y registros**

La Oficina de Inspección de Notarías establecerá los mecanismos necesarios para la inspección de protocolos y registros de los notarios y las notarias conforme a las normas siguientes:

.     .        .         .         .      .       .

(f) La inspección se practicará en relación con el Protocolo y los registros correspondientes al año o años que disponga la Oficina de Inspección de Notarías, y podrá ser suspendida si una vez revisado un mínimo del veinticinco por ciento (25%) que no fuera inferior a cien (100) folios, en forma continua o discontinua, el inspector, a su discreción no hallare motivo para continuarla. No obstante, la inspección de la cancelación de los aranceles será sobre la totalidad de los Protocolos y registros. La primera inspección se hará en un término no mayor de tres (3) años.

(g) En el ejercicio de sus funciones, el inspector comprobará si se ha dado cumplimiento a las normas vigentes que rigen el desempeño de la función notarial e indicará las anomalías observadas. Las inspecciones serán practicadas con criterio objetivo. Estas se limitarán a verificar el cumplimiento de los requisitos legales respecto a la forma de las escrituras, con abstención de

observaciones concernientes al fondo de los actos.

(h) El Inspector hará un señalamiento preliminar en el cual indicará las faltas y los comentarios pertinentes. En los casos necesarios hará una lista e indicará en cuanto a cada falta: el número del instrumento y del folio donde la observó, y su naturaleza, o en caso de una deficiencia en estampillas, su cuantía. En los casos de faltas repetidas, el Inspector podrá hacer un señalamiento de carácter general.

(i) El Inspector dejará al notario, al terminar cada día de inspección, una copia del señalamiento de faltas correspondiente a ese día.

(j) Si finalizado el examen, el Inspector no aprueba el Protocolo o el Registro de Testimonios, deberá pautar una reunión final para una fecha posterior al décimo quinto día de su última visita.

(k) En la reunión final, el Inspector determinará si las faltas preliminares señaladas han sido subsanadas y discutirá con el notario cualesquiera divergencias de criterio.

(l) Si luego de la reunión final no subsiste falta o divergencia alguna, el Inspector extenderá bajo su firma la correspondiente nota de aprobación al reverso del último folio de cada tomo del último instrumento público del Protocolo objeto de la inspección. Remitirá subsiguientemente su informe final e indicará tal aprobación al Director de la Oficina de Inspección de Notarías. Aprobado el Protocolo, el informe de señalamientos de faltas, de haberlo, será destruido.

(m) Si luego de la reunión final subsiste alguna falta o divergencia de criterio, el Inspector dejará al notario una copia del señalamiento de faltas correspondiente a la inspección final, firmada como recibida por el notario o por la persona autorizada por éste.

El Inspector rendirá al Director de la Oficina de Inspección de Notarías, dentro del

término de sesenta (60) días posteriores a la inspección final, un informe de las faltas o divergencias de criterios referentes a la obra notarial inspeccionada. El Director de la Oficina de Inspección de Notarías procederá en conformidad con lo dispuesto en la Regla 79.

(n) Si el Inspector no puede completar la inspección por razones atribuibles al notario, remitirá un informe a tales efectos al Director de la Oficina de Inspección de Notarías, que incluirá una breve relación de los hechos ocurridos; le unirá una copia de los señalamientos hechos hasta ese momento, y notificará simultáneamente copia al notario. El Director de la Oficina de Inspección de Notarías procederá de conformidad con lo dispuesto en la Regla 79.

(o) Cualquier notificación por correo será efectuada a la dirección que surja del Registro Único de Abogados y Abogadas de Puerto Rico.

(p) La inspección de las actas notariales sobre asuntos no contenciosos se efectuará de conformidad con lo dispuesto en esta regla y en las instrucciones que la Oficina de Inspección de Notarías emita a estos efectos.

(q) Los testimonios presentados mediante el mecanismo de Índice de Actividad Notarial se aprobarán de manera electrónica y se le notificará al notario de tal aprobación mediante el método electrónico designado por el Tribunal Supremo.

.        .        .        .        .        .

18. Se enmienda la Regla 81 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 81. Procedimientos ante el Tribunal Supremo de Puerto Rico**

(A) En caso de que el Director de la Oficina de Inspección de Notarías presente algún informe ante el Tribunal Supremo de Puerto Rico, le notificará oportunamente tal presentación al notario por vía electrónica oficial. En la alternativa, podrá notificar personalmente o por correo a la dirección postal que obre en el

Registro Único de Abogados y Abogadas de Puerto Rico. El Director de la Oficina de Inspección de Notarías certificará al Tribunal la fecha y la forma en que el notario fue notificado.

(B) Cuando se trate de un informe adverso que inicie un trámite disciplinario, el notario podrá presentar su contestación al informe final ante el Tribunal Supremo de Puerto Rico dentro de los veinte (20) días siguientes a la fecha de la notificación, a menos que el Tribunal disponga otra cosa. El notario incluirá en su contestación una breve relación de cualesquiera controversias de hecho o de derecho que estime indispensables y que deban ser resueltas por el Tribunal. En este trámite, el notario podrá comparecer ante el Tribunal por sí o a través de representación legal.

(C) Una vez presentado el informe, las partes se notificarán mutuamente cualquier escrito que presenten ante el Tribunal y así lo certificarán en el propio documento.

**Comentarios.**

Esta regla dispone los procedimientos que inician como resultado de la presentación de los informes del Director de la Oficina de Inspección de Notarías ante el Tribunal Supremo. En estos casos, se requiere notificar de forma oportuna al notario o notaria correspondiente para asegurar total transparencia con el procedimiento. Se persigue agilizar este trámite con la notificación electrónica. Para ello, la regla dispone que el método preferible para que la Oficina de Inspección de Notarías notifique al notario o notaria sobre la presentación de un informe ante el Tribunal Supremo es la vía electrónica oficial. Cuando no sea posible notificar de forma electrónica, se proveen como alternativas la notificación personal o por correo postal. Además, la regla exige constatar la fecha y la forma de la notificación al notario mediante certificación del Director de la Oficina de Inspección de Notarías.

De igual forma, se establece el término para que el notario presente su contestación cuando el informe final de la Oficina de Inspección de Notarías conlleve el inicio de un procedimiento disciplinario. En tales casos, se permite que el

notario pueda comparecer por sí o a través de representación legal.

Por último, el inciso (C) requiere que las partes se notifiquen mutuamente los escritos que presenten ante la consideración del Tribunal Supremo y que certifiquen tal notificación en ese mismo documento.

19. Se enmienda la Regla 82 del Reglamento Notarial de Puerto Rico, supra, para que disponga lo siguiente:

**Regla 82. Procedimiento disciplinario**

El procedimiento disciplinario contra un notario, con excepción de los que surjan con motivo de un informe adverso del Director de la Oficina de Inspección de Notarías, estará sujeto a lo dispuesto en la Regla 14 del Reglamento del Tribunal Supremo (2011), 4 LPRA Ap. XXI-B.

.    .    .    .    .    .    .    .

Estas enmiendas entrarán en vigor inmediatamente.

Se delega al Director de la Oficina de Inspección de Notarías (ODIN) la actualización de las Instrucciones Generales a los Notarios y las Notarias que ameriten modificación al amparo de las enmiendas aquí aprobadas. De igual forma, se le instruye para que adapten y publiquen los formularios que deban atemperarse a los trámites enmendados. El Director de la ODIN contará con el apoyo de la Oficina de Prensa de la Oficina de Administración de los Tribunales para la divulgación de estos documentos en el Portal del Poder Judicial.

Notifíquese por correo electrónico al Director Administrativo de los Tribunales, al Director de la Oficina de Inspección de Notarías, a la Directora del Secretariado de la Conferencia Judicial y Notarial, y al Director de la Oficina de Prensa de la Oficina de Administración de los Tribunales.

Publíquese.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

José Ignacio Campos Pérez

Secretario del Tribunal Supremo